**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

JOHN O'DELL,

                Plaintiff,

    v.

PJ CHEESE, INC.,

                Defendant.

Case No. 6:26-cv-00406-ACC-RMN

**PLAINTIFF'S COMBINED MOTION TO CONFIRM ARBITRATION AWARD, AND MEMORANDUM IN SUPPORT THEREOF**

Plaintiff John O'Dell ("Plaintiff" or "Mr. O'Dell"), by and through his counsel, respectfully moves the Court under Section 9 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9, to confirm the arbitration award issued February 18, 2026 (Ex. 1), that expressly adopts and incorporates Orders issued June 20, 2025 and November 17, 2025 (collectively "the Final Award").

This case comes before this Court after Respondent PJ Cheese, Inc. ("PJ Cheese") has engaged in a scorched earth process of fighting every issue in arbitration.  PJ Cheese will likely contest this motion, but without valid grounds.

The Final Award was issued by a duly appointed arbitrator, Judge Melvia Green (Ret.); and the final award incorporated decisions issued by two other arbitrators – Judge Carol E. Heckman (Ret.) and William Lemons. Judge Green, Judge Heckman and Mr. Lemons' decisions were correct.

1

However, even if all three arbitrators were clearly wrong (they are not), the FAA and controlling Eleventh Circuit law require that the final award be confirmed. The Eleventh Circuit has explained that ""the sole question" in deciding  whether to confirm or vacate an arbitration award "is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." *Nalco Co. LLC v. Bonday*, 142 F.4th 1336, 1364 (11th Cir. 2025) (parentheses in original).  Judge Green Judge Heckman, and Mr. Lemons all inarguably interpreted the parties' contract. Thus, confirmation is required.

Accordingly, Plaintiff respectfully requests the Court expeditiously confirm Judge Green's final award. In further support of the Motion, Plaintiff states:

## I.      FACTUAL BACKGROUND

### A.      Facts Relevant to Confirmation of the Final Award

Respondent PJ Cheese, Inc. ("PJ Cheese") is an Alabama corporation that operates Papa Johns stores in this District, including the Papa Johns store located at 1129 North Woodland Boulevard, Deland, Florida, 32720. Exs. 2 & 3.

PJ Cheese employed Mr. O'Dell as a pizza delivery driver at that Deland, Florida Papa Johns store from about June 2022 to November 2025.

In or around September 2021, the parties executed an arbitration agreement, which bound them to arbitrate specified types of disputes between them. Ex. 4.

On July 29, 2024, Mr. O'Dell, through counsel, emailed and mailed a Florida

2

pre-suit notice letter to PJ Cheese's attorney, Will Hancock, pursuant to Fla. Stat. § 448.110(6)(a). Ex. 5. Mr. O'Dell identified his minimum wage claim based on under-reimbursed vehicle costs (nominal wages – unreimbursed vehicle costs incurred in performing his job = subminimum net wages). *Id.* at 1-2. Based on his estimates prior to receiving PJ Cheese's data, Mr. O'Dell demanded that PJ Cheese pay him $9,817.50. *Id.*

On or about July 31, 2024, PJ Cheese disclosed Mr. O'Dell's pay records and a spreadsheet reflecting Mr. O'Dell's work time, pay, mileage and reimbursement data. Ex. 6 ¶ 2. Mr. O'Dell's counsel used that data to recalculate Mr. O'Dell's damages. *Id.* That day, Mr. O'Dell's counsel emailed and mailed Mr. Hancock two amended Florida pre-suit notices pursuant to Fla. Stat. § 448.110(6)(a), ultimately demanding $7,267.78. *Id.* ¶ 11; Ex. 6 at 1-2.

On or about August 27, 2024, PJ Cheese paid Mr. O'Dell a purported $7,267.78 "Bonus" (wages) less $3,063.47 deducted from that payment for "Federal Tax," "FICA Social Security Tax," and "FICA Medicare Tax," leaving Mr. O'Dell a net payment of $4,204.31 Ex. 8.

Mr. O'Dell's counsel objected to those withholdings. They attempted to resolve this dispute through negotiation and by citing authority to PJ Cheese's attorney holding that the recovery constituted "reimbursements" for job expenses, not "wages," and that PJ Cheese may not withhold taxes from reimbursements. PJ

Cheese failed to provide any legal authority. Nonetheless, PJ Cheese continued its refusal to pay Mr. O'Dell the remaining $3,063.47 demanded in his July 31, 2024 amended Florida pre-suit notice. Ex. 6 ¶ 12.

Due to that refusal, Mr. O'Dell was forced to file an arbitration claim against PJ Cheese on August 15, 2024 under the Fair Labor Standards Act ("FLSA"), Fla. Const. § X Art. 24, and the Florida Minimum Wage Act ("FMWA"), Fla. Stat. § 448.110. Mr. O'Dell sought $3,063.47 that PJ Cheese withheld from his recovery, $7,267.78 for liquidated damages, plus fees and costs. Ex. 9.

On November 1, 2025, the American Arbitration Association ("AAA") appointed William Lemons as process arbitrator over approximately 125 similar claims against PJ Cheese and its affiliates, including Mr. O'Dell's arbitration. Ex. 10. Part of Mr. Lemons' duties included overseeing "[t]he selection process for Merits Arbitrators." AAA Mass Arbitration Supplementary Rule MA-6(c)(v). PJ Cheese promptly objected to Arbitrator Lemons' authority to oversee that task. The parties briefed that issue. On November 22, 2024, Arbitrator Lemons issued an Order holding that his authority was governed by the AAA Mass Arbitration Supplementary Rules, which provides that a process arbitrator holds the authority to oversee "[t]he selection process of Merits Arbitrators." AAA Mass Arbitration Supplementary Rule MA-6(c)(v). Ex. 11. PJ Cheese continued to object to Arbitrator Lemons' authority to oversee selection of merits arbitrators.

4

The approximately 125 arbitration claims were stayed by agreement to provide opportunity to mediate. Claimant's counsel spent considerable time preparing to mediate all of the approximately 125 claims, including obtaining authority from nearly all of those claimants. However, shortly prior to the mediation, PJ Cheese's attorney effectively derailed the mediation by declaring that PJ Cheese was only willing to mediate three of those claims. Ex. 6 ¶ 13. Following an unsuccessful mediation of those three claims, PJ Cheese continued to object to Arbitrator Lemons' authority to oversee the selection of merits arbitrators. The parties explained their respective positions to AAA. On February 24, 2025, the AAA informed the parties that Mr. Lemons November 22, 2024 Order "remains in effect." Ex. 12.

The AAA asked the parties whether they object to Mr. Lemons continuing as process arbitrator following the unsuccessful mediation. Mr. O'Dell and other delivery drivers consented to Mr. Lemons' continuation. Ex. 6 ¶ 14. PJ Cheese consented to Mr. Lemons' continuation *contingent on* an agreement to limit Mr. Lemons' authority to only "scheduling and coordinating." *Id.* Based on that condition PJ Cheese attempted to impose, the AAA held another process arbitrator selection process. Ex. 13.

As a result of a second process arbitrator selection process, the AAA replaced Mr. Lemons as process arbitrator with Judge Carol Heckman (Ret.). Judge

Heckman attempted to facilitate merits arbitrator appointments, but PJ Cheese objected to her authority to do so. Ex. 6 ¶ 15.

The parties again briefed the process arbitrator's ability to oversee merits arbitrator selection. Judge Heckman held that she holds such authority. *See, e.g.,* Ex. 14 (same as "Exhibit 2" to February 18, 2026 Final Award (Ex. 1))) at 8-9 (recognizing that process arbitrator holds authority pursuant to the AAA rules to decide various disputes).

Longer than *seven months after* Mr. O'Dell filed his arbitration claim with AAA, PJ Cheese sued Mr. O'Dell and 116 other delivery drivers on April 4, 2025 in the Northern District of Alabama. *PJ Cheese, Inc. et al. v. Ashmore, et al.*, Case No. 2:25-cv-00500-NAD (N.D. Ala.) (ECF 1). PJ Cheese sought an order compelling Mr. O'Dell and the other delivery drivers to arbitrate in a manner sought by PJ Cheese, although every one of those delivery drivers, like Mr. O'Dell, had already filed a AAA arbitration claim against PJ Cheese or its affiliates, and they were actively pursuing those arbitration claims at the time. *Id.* at 2. PJ Cheese further demanded that the district court appoint arbitrators, as opposed to allowing the AAA to continue with its arbitrator selection process. *Id.*

On April 17, 2025, the AAA held an administrative conference attended by counsel for the parties. During that conference, Mr. Hancock stated that PJ Cheese and its affiliates expressly refused to pay their arbitration fees, then totaling

$161,825.00. Ex. 6 ¶ 16; Ex. 15. Those fees included overdue per-case fees and arbitrator appointment fees. *Id.* Mr. Hancock further stated that his clients refused to pay those arbitration fees unless a court orders them to pay those fees. *Id.*

The next day, April 18, 2025, Mr. Hancock expressly advised the AAA in writing that PJ Cheese and its affiliates "are suspending their participation in the AAA's administration of arbitration demands filed with the AAA as to each driver named in the petition Respondents ["the Employers" here] filed in the United States District Court for the Northern District of Alabama[.]" Ex. 16 at 4.

On April 29, 2025, the delivery drivers filed a Motion to Order Respondents [PJ Cheese and its affiliates] To Pay AAA Fees. Ex. 14 at 2.

On May 12, 2025, the delivery drivers, including Mr. O'Dell, filed two motions to dismiss PJ Cheese's federal suit on various grounds, including lack of personal jurisdiction over out-of-state delivery drivers like Mr. O'Dell. *PJ Cheese, Inc. et al. v. Ashmore, et al.*, Case No. 2:25-cv-00500-NAD (N.D. Ala.) (ECF 7) at 9-14; *id.* (ECF 19).

On May 20, 2025, Judge Heckman heard oral argument on the Motion to Order Respondents To Pay AAA Fees. *Id.* at 1. Judge Heckman required supplemental briefing, which the parties submitted. *Id.* at 1-2.

On June 20, 2025, Judge Heckman granted the Motion to Order Respondents To Pay AAA Fees. Ex. 14 at 9-10. She gave PJ Cheese 30 days to pay. *Id.* at 10.

Judge Heckman concluded that PJ Cheese failed and refused to pay its AAA fees. Specifically, Judge Heckman found that "on April 4, 2025, counsel for Respondents [PJ Cheese and its affiliates] announced that the PJ Cheese entities were withdrawing from participating in the AAA administrative process of appointing arbitrators and that they would not be paying AAA invoices for filing fees that had been issued by the AAA in connection with its efforts to begin the process of merits arbitrator selection." *Id.* at 4.

Judge Heckman further found that "[o]n April 17, 2025, the AAA advised that the AAA would proceed with arbitrator selection upon the parties' confirmation that they had mailed the checks for their respective shares of the per case fees and arbitrator fees. Claimants' counsel confirmed that Claimants' checks to cover those AAA fees were previously mailed to the AAA. However, Respondents' counsel informed the AAA that they should not expect to receive a check for the filing fees." *Id.* at 6.

Judge Heckman further found that "Respondents are suspending their participation in the AAA's administration of arbitration demands[.]" *Id.*

Five days later, on June 25, 2025, PJ Cheese filed an "Emergency Application for Injunctive Relief" in the Northern District of Alabama. *PJ Cheese, Inc. et al. v. Ashmore, et al.*, Case No. 2:25-cv-00500-NAD (N.D. Ala.) (ECF 17). PJ Cheese sought relief including requests that the district court:

8

a. Enjoin all claimants from participating in arbitrator selection and other case administration by AAA or otherwise seeking the benefit of any proceeding or order issued by any person purporting to be an arbitrator appointed by the AAA;

b. Enjoin the AAA from administering any claimant's arbitration demand or seeking any fees or costs associated with its treatment of the individual arbitration demands as a mass arbitration;

c. Enjoin Judge Heckman from taking any further action with respect to any arbitration demand filed by any claimant with the AAA; and

d. Enjoin the operation of all orders issued by Mr. Lemons and Judge Heckman.

*Id.* at 11 (emphasis added).[1]

The 30-day deadline for PJ Cheese and its affiliates to pay their AAA fees lapsed on July 20, 2025 without PJ Cheese paying any part of those fees. Ex. 6 ¶ 17.

On July 30, 2025, the AAA notified the parties that PJ Cheese and its affiliates had also failed and refused to pay Judge Heckman's compensation in the amount of $39,947.50, increasing their total financial delinquency to $201,772.50. Ex. 17.

On July 30, 2025, AAA also notified the parties that it had suspended administration of more than 100 arbitration claims due to refusals of PJ Cheese and its affiliates to pay their arbitration fees. Ex. 18.

The Northern District of Alabama granted in part the motions to dismiss,

---

[1] The Northern District of Alabama denied all such relief. *PJ Cheese, Inc. et al. v. Ashmore, et al.*, Case No. 2:25-cv-00500-NAD (N.D. Ala.) (ECF 39).

including dismissal of PJ Cheese's claims against Mr. O'Dell and all of the other out-of-state delivery drivers who had not signed an Alabama choice of forum provision. *PJ Cheese, Inc. et al. v. Ashmore, et al.*, Case No. 2:25-cv-00500-NAD (N.D. Ala.) (ECF 27) at 9-13.

To date, PJ Cheese and its affiliates continue to fail and refuse to pay any part of the $161,825.00 due as of April 2025. Ex. 6 ¶ 18.

On November 20, 2025, AAA notified the parties that PJ Cheese continued its failure and refusal to pay fees, and that PJ Cheese owed Judge Heckman an additional $1,522.50, increasing its total due to Judge Heckman's to $41,470.00, and increasing PJ Cheese's total delinquency to AAA to $203,295.00. Ex. 20.

Before the process arbitrator, the parties also briefed the issues of (1) whether the parties' arbitration agreement validly restricts the pool of arbitrators to only seven Alabama attorneys and (2) whether to impose sanctions for PJ Cheese's attorney's direct contacts with Mr. O'Dell and more than 100 other represented delivery drivers. Judge Heckman held that PJ Cheese's attempt to restrict the arbitrator pool is invalid and unenforceable, facilitating appointment of Judge Green and several other merits arbitrators. Ex. 14 at 7-10.

Among approximately 125 arbitration claims filed by Mr. O'Dell's counsel against PJ Cheese and its affiliates between 2024 and early 2025, only 14 of those claims, including Mr. O'Dell's claims, proceeded in arbitration. Ex. 6 ¶ 19.

The reason that only those 14 claims proceeded in arbitration is that Mr. O'Dell's counsel advanced PJ Cheese's arbitration fees totaling $19,950.00. *Id.*; Ex. 21. The proportionate dollar amount advanced for PJ Cheese's fees in Mr. O'Dell's claim is $1,425.00 ($19,950.00 advanced / 14 claims = $1,425.00 advanced in each of 14 claims). *Id.*

On October 16, 2025, PJ Cheese filed a summary judgment motion asking Judge Green to decide Mr. O'Dell's claims in its favor. The same day, Mr. O'Dell filed a cross-motion for summary judgment titled "Claimant's Brief Regarding Defendants' Taxation of Damages Paid to Claimant and Associated Liquidated Damages." Ex. 22 (same as "Exhibit 1" to February 18, 2026 Final Award (Ex. 1)).

On November 17, 2025, Judge Green issued her Order on Cross-Motions for Summary Judgment." *Id.* Therein, Judge Green awarded Mr. O'Dell $3,063.47 as "reimbursements … free and clear of any tax withholdings." *Id.* at 8-9.

The parties then briefed the remaining issues of liquidated damages, fees and costs. Ex. 1 at 1-2.

On February 18, 2026, Judge Green issued her Final Award (a) awarding Mr. O'Dell $3,063.47 as "reimbursements for job expenses," (b) awarding him $7,240.80 as Florida liquidated damages, (c) awarding Mr. O'Dell's counsel $241,723.00 for fees, (d) awarding Mr. O'Dell's counsel $1,425.00 for advancement of PJ Cheese's arbitration fees, and (e) awarding $481.80 for costs of arbitration. Ex. 1 at 2-3.

Judge Green also expressly adopted and incorporated Judge Heckman's June 20, 2025 Order and her own November 17, 2025 Order into the Final Order (*id.* at 1-2). Pursuant to the June 20, 2025 Order incorporated into the Final Award, PJ Cheese owes the AAA $161,825.00 for arbitration fees. *Id.* at 2.

To date, PJ Cheese has paid none of the relief awarded by Judge Green. Ex. 6 ¶ 20.

## II.   ARGUMENT

### A.   Jurisdiction and Venue

The Court holds diversity jurisdiction under 28 U.S.C. § 1332 because more than $75,000.00 is in controversy, Mr. O'Dell is a citizen of Florida, and PJ Cheese is a citizen of Alabama. PJ Cheese is an Alabama corporation that maintains its principal place of business at 2300 Resource Drive, Birmingham, Alabama, 35242.

The Court maintains personal jurisdiction over PJ Cheese and venue because PJ Cheese operates Papa Johns stores in this District, it thus conducts ongoing business in this District, and events underlying the claims occurred in this District. Ex. 3; 28 U.S.C. § 1391; Fla. Stat. §§ 48.193(1)(a)(1), (6)(b) & (2).

Venue also lies in this District under FAA § 9, 9 U.S.C. § 9, because Judge Green issued the Final Award within this District. *Id.* ("If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made.").

12

**B.      Standard for Confirmation of an Arbitration Award**

In pertinent part, FAA § 9 states:

If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.  If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made.

9 U.S.C. § 9.

The parties agreed to judicial confirmation. Page 5 of their arbitration agreement states that "[t]he agency will administer any arbitration under the AAA's 'Employment Arbitration Rules and Mediation Procedures'…" Rule 51(b) of the AAA's Employment Arbitration Rules and Mediation Procedures states that "[p]arties to an arbitration under these Rules shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof." Available at https://www.adr.org/media/0vrpbnm0/2025_employment_arbitration_rules.pdf (last visited Feb. 24, 2026) at 26. Parties that agree to AAA rules that provide for judicial confirmation are deemed to have agreed to judicial confirmation pursuant to FAA § 9, 9 U.S.C § 9. *Ghaly v. Sun Pack & Ship, Inc.*, 2025 U.S. Dist. LEXIS 6201, at *3-7 (M.D. Fla. Jan. 13, 2025) (collecting cases); *Vixicom, LLC v. Four Corners Direct*, 2016 U.S. Dist. LEXIS

13

130060, at *5 (M.D. Fla. June 30, 2016).

In *Hall St. Assocs., LLC v. Mattell, Inc.*, 552 U.S. 576 (2008), the Supreme Court held that "§§ 10 and 11 respectively provide the FAA's *exclusive grounds* for expedited vacatur and modification." 552 U.S. at 582 (emphasis added); *Nalco  Co.*, 142 F.4th at 1355. Since that Supreme Court decision, the Eleventh Circuit has held "that our judicially-created bases for vacatur [including 'manifest disregard of the law'] are no longer valid in light of *Hall Street*." *Nalco Co.*, 142 F.4th at 1355 (bracketed text in original) (citing *Frazier v. CitiFinancial Corp.*, 604 F.3d 1313, 1324 (11th Cir. 2010)).

FAA § 10 provides the exclusive list of reasons for *vacatur*:

(1)     where the award was procured by corruption, fraud, or undue means;
(2)     where there was evident partiality or corruption in the arbitrators, or either of them;
(3)     where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
(4)     where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

*Id.*

FAA § 11 provides the exclusive grounds for modifying or correcting an arbitration award:

(a)     Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person,

14

thing, or property referred to in the award.

(b)   Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.

(c)   Where the award is imperfect in matter of form not affecting the merits of the controversy.

*Id.*

The Eleventh Circuit further recognizes that since *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013), "the sole question [in an FAA § 10(4) motion to vacate] … is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." *Nalco Co.*, 142 F.4th at 1364 (parentheses in original).

The Supreme Court holds that FAA § 9 "…carries no hint of flexibility. On application for an order confirming the arbitration award, the court 'must grant' the order 'unless the award is vacated, modified, or corrected.'" *Hall St. Assocs.*, 552 U.S. at 587; *PTA-Fla, Inc. v. ZTE USA, Inc.*, 844 F.3d 1299, 1306 (11th Cir. 2016) (following *Hall St. Assocs.*). The Supreme Court further established that "[t]here is nothing malleable about 'must grant,' which unequivocally tells courts to grant confirmation in all cases, except when one of the 'prescribed' exceptions applies." *Id.*, 551 U.S. at 589.

The Eleventh Circuit cautions that, in applying these grounds for vacating, modifying, or correcting an award, courts "'must always bear in mind that the basic policy of conducting arbitration proceedings is to offer a means of deciding

15

disputes expeditiously and with lower costs than in ordinary litigation.'"" *Freeman v. Citibank, N.A.,* 2015 U.S. Dist. LEXIS 197610, at *29 (N.D. Ga. Jan. 20, 2015) (quoting *Pochat v. Merill Lynch,* 2013 U.S. Dist. LEXIS 119447, at *19 (S.D. Fla. Aug. 22, 2013) (citing *Schmidt v. Finberg,* 942 F.2d 1571, 1573 (11th Cir. 1991)).

A party challenging an arbitration award holds the burden of proof, and "'the showing required to avoid confirmation is very high.'" *Freeman* 2015 U.S. Dist. LEXIS 197610, at *26; *see also, e.g., Diamond Resorts U.S. Collection Dev., LLC v. Johnson,* 2018 U.S. Dist. LEXIS 178135, at *5 (M.D. Fla. Oct. 17, 2018) (same).

The Eleventh Circuit emphasizes that "'[j]udicial review of arbitration decisions is among the narrowest known to the law.'" *Gherardi v. Citigroup Mkts., Inc.,* 2020 U.S. App. LEXIS 29683, at *6 (11th Cir. Sept. 17, 2020) (quoting *Bamberger Rosenheim, Ltd. v. OA Dev., Inc.,* 862 F.3d 1284, 1286 (11th Cir. 2017) (quoting *AIG Baker Sterling Heights, LLC v. Am. Multi-Cinema, Inc.,* 508 F.3d 995, 1001 (11th Cir. 2007)). "Arbitrators do not exceed their powers when they make errors, even 'a serious error.'" *Id.* (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l. Corp.,* 559 U.S. 662, 671-72 (2010) ("It is not enough for petitioners to show that the panel committed an error—or even a serious error."). Thus, the only question for the Court "is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." *Oxford Health Plans,* 569 U.S. at 569; *Gherardi,* 2020 U.S. App. LEXIS 29683, at *18 (same).

The Eleventh Circuit further added that "an arbitrator's actual reasoning is of such little importance to our review that it need not be explained – the decision itself is enough." *Id.*, 2020 U.S. App. LEXIS 29683, at \*7 (citing *O.R. Sec., Inc. v. Prof'l. Planning Assocs., Inc.*, 857 F.2d 742, 747 (11th Cir. 1988)).

The Eleventh Circuit explained that "[t]his rule can be a tough pill to swallow for a losing party subjected to what seems like a legally questionable interpretation." *Id.* (citing *Oxford Health Plans,* 569 U.S. at 569; *United Steelworkers of Am. v. Enter. Wheel & Car Corp.,* 363 U.S. 593, 599 (1960)). However, the Eleventh Circuit next recognized that, despite that "tough pill to swallow," courts "have good reason to defer to the arbitrator's reasoning, even when it is different than our own. Arbitration agreements are contracts where the bargain is for the arbitrator's construction of the underlying agreements, rather than for any particular outcome." *Id.*

Indeed, the Eleventh Circuit recognizes that "[t]here is a presumption under the FAA that arbitration awards will be confirmed, and 'federal courts should defer to an arbitrator's decision whenever possible.'" *Floridians for Solar Choice, Inc. v. Paparella,* 802 Fed. Appx. 519, 521 (11th Cir. 2020) (citing *Johnson v. Directory Assistants, Inc.*, 797 F.3d 1294, 1299 (11th Cir. 2015)). "[F]ew awards are vacated because the scope of the arbitrator's authority is so broad." *Wiregrass Metal Trades Council AFL-CIO v. Shaw Envtl. & Infrastructure, Inc.*, 837 F.3d 1083, 1087 (11th Cir.

2016) (citing *Bakery, Confectionery & Tobacco Workers Local Union No. 362-T, AFL-CIO-CLC v. Brown & Williamson Corp.*, 971 F.2d 652, 655 (11th Cir. 1992)).

## C.     The Court Must Confirm The Final Award

The Final Award was issued in accordance with the parties' arbitration agreement and is proper in all respects. Defendants cannot reasonably show any of the exclusive grounds for vacating, modifying or correcting the Final Award set forth in FAA §§ 10 and 11. Thus, the Court must confirm the Final Award under FAA § 9. *Hall St. Assocs.*, 552 U.S. at 583; *Mid Atl. Cap. Corp. v. Bien*, 956 F.3d 1182, 1194 (10th Cir. 2020) (following *Hall St. Assocs.*).

As just stated, under controlling Eleventh Circuit law, the Final Award must stand if "the arbitrator (even arguably) interpreted the parties' contract." *Nalco Co.*, 142 F.4th at 1364 (following *Hall St. Assocs.*). The Eleventh Circuit recognizes that showing that an arbitrator "even arguably interpreted" the parties' agreement can entail as little as pointing to the arbitrator quoting terms of that agreement. *See, e.g., Hidroelectrica Santa Rita S.A. v. Corporacion AIC, SA*, 119 F.4th 920, 926 (11th Cir. 2024) ("The Tribunal's explanations evidence that it engaged with the contract's language, thereby sticking to '[its] delegated task of interpreting a contract' and acting within the bounds of its authority.') (citing *Oxford Health Plans*, 569 U.S. at 572); *S. Commun's. Servs. v. Thomas*, 720 F.3d 1352, 1359-60 (11th Cir. 2013) (finding that arbitrator "arguably 'interpreted the parties' contract"

18

because that arbitrator quoted arbitration agreement language, then considering the meaning of the quote); *see also, e.g., Spirit Airlines v. Maizes*, 2017 U.S. Dist. LEXIS 151349, at \*20 (S.D. Fla. Sept. 19, 2017) (recognizing that the Eleventh Circuit in *S. Commun's. Servs.* found that the arbitrator arguably interpreted the parties' contract because the arbitrator "recounting the text of the contract's arbitration clause" adopting AAA rules, which ended the inquiry); *Bamberger Rosenheim, Ltd. v. OA Dev., Inc.*, 2016 U.S. Dist. LEXIS 191050, at \*19 (N.D. Ga. Aug. 24, 2016) ("…the Arbitrator engaged with the contract's language and at least arguably construed the contract in reaching his conclusion."). At minimum, Plaintiff shows that the arbitrators quoted relevant provisions of the parties' agreement, then interpreted and/or applied the quoted language. That is sufficient. *Id.*

The face of the Final Award, and the earlier awards incorporated therein, clearly show that the arbitrators considered and interpreted the parties' arbitration agreement. To start with, in Arbitrator Lemons November 22, 2024 Order Determining That AAA Mass Arbitration Supplementary Rules For Employment Cases Apply," he quoted the pertinent language of the agreements:

> The agency will administer any arbitration under the AAA's "Employment Arbitration Rules and Mediation Procedures" and in conformity with this Dispute Resolution Program. . . . The rules in effect on the date a demand is made shall control.

Ex. 11 at 1. Arbitrator Lemons next recognized that the AAA's Mass Arbitration Supplementary Rules were "placed in play" by the parties' agreement as they

19

expressly required arbitration pursuant to the AAA Employment Arbitration Rules. *Id.* at 1-2. Arbitrator Lemons explained that the parties must modify the arbitration agreements to avoid the Mass Arbitration Supplementary Rules. *Id.* at 2 n.2. Arbitrator Lemons also recognized that the parties' arbitration agreement provided him, as an arbitrator, the exclusive authority to interpret the arbitration agreement and that agreement expressly prohibited any court from such interpretations. *Id.* n.1 (referencing Ex. 4 at 6 ("Unless this provision would result in the Program being held unenforceable under prevailing law, the arbitrators, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, arbitrability, applicability, enforceability or formation of the agreement to arbitrate including, but not limited to, any claim that all or any part of the agreement to arbitrate is void and voidable.")). Thus, at the very minimum, Arbitrator Lemons arguably interpreted the parties' arbitration agreement.

Judge Heckman built on Arbitrator Lemons' November 22, 2024 ruling that the AAA Mass Arbitration Supplemental Rules apply pursuant to the terms of the arbitration agreement. In the June 20, 2025 Order, Judge Heckman held that those rules provide that "the process arbitrator shall have the authority to determine ... [d]isputes regarding payment of administrative fees, arbitrator compensation and expenses." Ex. 14 at 9.  Even assuming *arguendo* that Defendant is correct that the

20

Mass Arbitration Supplemental Rules do not apply, Judge Heckman applied the AAA Employment Arbitration Rules that Defendant expressly agrees applies per the parties' arbitration agreement. Specifically, Judge Heckman held that "AAA Employment Arbitration Rule 39(d) also gives arbitrators the power to order parties to pay AAA's fees. That rule provides that: "[i]n the event any administrative fees or expenses are due the AAA," an arbitrator may order payment of such fees "subject to the provision contained in [the AAA's] cost of arbitration section." *Id.* at 9-10 (citing cases).

Thus, at the very least, both Arbitrator Lemons and Judge Heckman arguably interpreted the arbitration agreements. Even if there were no doubt that Arbitrator Lemons and Judge Heckman decided every issue incorrectly (they did not), PJ Cheese's inevitable arguments that those arbitration decisions were decided incorrectly would fail to comprise sufficient grounds to vacate the Final Award. *Nalco Co.*, 142 F.4th at 1364 (following *Hall St. Assocs.*).

The June 20, 2025 Order, incorporated into the February 18, 2025 Order, reflects that Judge Heckman considered the validity and enforceability of a specific provision in the parties' arbitration agreement (referenced by Judge Heckman as "Dispute Resolution Program" or "DRP"). Ex. 14 at 7-9. Judge Heckman recognized that PJ Cheese's "primary opposition" to the claimants' motion to invalidate the arbitration agreement's restriction to a pool of only seven Alabama

21

arbitrators "is that the language in the arbitration agreements must be enforced as written." *Id.* at 8. Judge Heckman rejected that argument "because an arbitration contract is not necessarily enforced as written if clauses in it violate due process or are unconscionable." *Id.* Judge Heckman found the restriction to a small pool of Alabama arbitrators was unconscionable and "not workable as a practical matter" because it "creates a particularly one-sided (because Alabama has no wage code) and small pool which impairs Claimants' rights to make a meaningful selection of merits arbitrators." *Id.* (citing cases). Thus, the June 20, 2025 Order must stand as it is clearly based on Judge Heckman's interpretation of the arbitration agreement. Judge Green adopted the same language and reasoning of the June 20, 2025 Order as part of the Final Award. Ex. 1 at 2.

PJ Cheese also argued that Judge Heckman had no authority to decide enforceability of arbitration agreement provisions, such as the restriction to a small pool of Alabama arbitrators. Ex. 14 at 8. Judge Heckman rejected that argument based on the arbitration agreement language, that "provides that the Arbitrator has the exclusive authority to determine enforceability of the terms of the DRP…" *Id.* Again, Judge Heckman's decision was expressly based on her interpretation of the parties' agreement. Again, Judge Green adopted the same reasoning and conclusion regarding as part of the Final Award. Ex. 1 at 2.

Judge Heckman's June 20, 2025 Order also shows that her ruling that PJ

22

Cheese must pay its arbitration fees is also based on the parties' arbitration agreement. Judge Heckman found that both AAA Employment Arbitration Rule 39(d) and AAA Mass Supplemental Rules MA-6(c)(iii) and 6(c)(xi) "give[] arbitrators the power to order parties to pay AAA's fees." Page 5 of the parties' arbitration agreement provides that "[t]he agency [AAA] will administer any arbitration under the AAA's 'Employment Arbitration Rules and Mediation Procedures'…" Ex. 14 at 9-10. Thus, Judge Heckman's application of the AAA Employment Rules was the direct result of her observance of the parties' choice of rules provision set forth in their arbitration agreement. *Id.* At the very least, this shows Judge Heckman was "arguably" interpreting the parties' agreement. *Id.*

The February 18, 2025 Final Award likewise contains express *indicia* that Judge Grene considered the arbitration agreement. For example, in awarding fees for efforts defending PJ Cheese's Northern District of Alabama suit against Mr. O'Dell, Judge Green recognized that "[t]he DRP states that, '[i]f either party pursues a legal claim covered by the Dispute Resolution Program in court by any means other than arbitration, the responding party shall be entitled to stay or dismissal of such action, the remand of such action to arbitration, and the recovery of all costs and attorney's fees and expenses related to such action." Ex. 1 at 13 n.3. Judge Green concluded that "it is concluded that Claimant O'Dell is contractually entitled to recoup his reasonable attorney's fees for this related federal proceeding

23

pursuant to the parties Dispute Resolution Program ("DRP") and as a matter of law to preserve his FLSA arbitration proceeding herein." *Id.* at 12-13. That is another clear indication that Judge Green interpreted the parties' agreement. *Id.*

**E.     The Court Should Reject PJ Cheese's Attempts To Reargue The Merits**

Based on counsel's extensive experience litigating and arbitrating against PJ Cheese, Plaintiff's counsel anticipates PJ Cheese will mainly seek to reargue the issues previously decided in arbitration. Those issues include (1) the process arbitrators' authority or lack thereof, (2) whether the process arbitrator could decide that restricting the pool of arbitrators to seven Alabama attorneys was invalid, (3) whether PJ Cheese must pay its arbitration fees, (4) whether Judge Green held authority to award fees for efforts before the process arbitrators, (5) whether Judge Green held authority to award fees for efforts in the Northern District of Alabama, (6) whether Judge Green held authority to incorporate Judge Heckman's June 20, 2025 Order requiring PJ Cheese to pay arbitration fees into the Final Award, (7) whether Judge Green correctly decided the issue of PJ Cheese's tax withholdings, (8) whether Judge Green correctly decided liquidated damages, and (9) whether Judge Green correctly decided Mr. O'Dell's fee and cost motion.

Despite PJ Cheese's likely efforts to reargue the merits, controlling Eleventh Circuit law expressly prohibits such inquiries on petitions to confirm, vacate or modify an arbitration award. *Nalco Co.*, 142 F.4th at 1364 (since *Oxford Health Plans*,

569 U.S. at 569, "the sole question [in an FAA § 10(4) motion to vacate] . . . is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong"); *see also Warrior Met Caol Mining LLC v. UMW*, 28 F.4th 1073, 1078 (11th Cir. 2022) ("If we determine that the arbitrator (even arguably) interpreted the parties' contract, we must end our inquiry and deny a motion for vacatur.") (quoting *Wiregrass Metal Trades,* 837 F.3d at 1088)).

**E.      Plaintiff Is Entitled To His Fees In Seeking Confirmation**

Plaintiff is entitled to recover his fees incurred in obtaining confirmation of the Final Award. *See, e.g., Nelson v. PJ Cheese, Inc.*, 2021 U.S. Dist. LEXIS 114633, at *3-4 (N.D. Ga. June 17, 2021) (awarding fees and costs of motion to confirm in similar claim against PJ Cheese); *Thomas v. Grease Guard, LLC,* 2018 U.S. Dist. LEXIS 235322, at *2 (N.D. Ga. Jan. 5, 2018) (same).

## III.   CONCLUSION

For all reasons stated, the Court should enter judgment for Mr. O'Dell, issue an order confirming the Final Award including the June 20, 2025 and November 17, 2025 Orders incorporated therein, and hold that PJ Cheese must pay (a) $3,063.47 for reimbursements free of tax withholdings, (b) $7,240.80 for liquidated damages, (c) $241,723.00 for fees, (d) $1,425.00 for reimbursement of PJ Cheese's arbitration fees, (e) $481.00 for arbitration costs; and (f) $161,825.00 for arbitration fees. The Court should also grant leave to file a motion for entitlement to fees.

25

## IV.   LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), counsel for Plaintiff conferred with opposing counsel in a good faith effort to resolve the issues raised in this motion.

____   **[Option A: Unopposed]** Opposing counsel does not object to the relief requested in this motion.

__X_   **[Option B: Opposed]** Opposing counsel has advised that they object to the relief requested in this motion.  Via email.

____   **[Option C: Partial Opposition]** Opposing counsel agrees to [part] but objects to [part].

Further explanation of meet and confer efforts: Claimant's counsel has made repeated good faith efforts to meet and confer with PJ Cheese's counsel, Will Hancock, about both Mr. Potashnick's *pro hac vice* application and about Claimant's Motion to Confirm Arbitration Award. However, Mr. Hancock has refused to meet and confer. On February 23, 2026, Claimant's counsel emailed Mr. Hancock the Petition to Confirm Final Arbitration Award and exhibits. Ex. 28. On February 23, 2026, Claimant's counsel wrote Mr. Hancock, "In M.D. Fla. We need to confer with opposing counsel regarding consent / objections to PHV applications.  Can we agree not to object to object to 3ach other's PHV application?"  Ex. 29. On February 25, 2026, Claimant's counsel emailed Mr. Hancock, "We intend to file a motion to confirm the final

26

award in the M.D. Fla. Case. When are you available later today or tomorrow to confer regarding that motion by telephone or Zoom?" Instead of meeting and conferring by telephone or by Zoom, Mr. Hancock emailed back, "Mark, please note that we do plan to apply for vacatur of the final award. The FAA gives us three months to do so." In response, Claimant's counsel wrote, "Understood, but we still need to discuss or intended motion to confirm the arbitration award by phone or in person pursuant to M.D. Fla. Local Rule 3.01(g). Again, when are you available to discuss by phone today or tomorrow?" Ex. 29. Mr. Hancock did not respond. On February 27, 2026, Claimant's counsel called Mr. Hancock on both his office and cellular telephone numbers. Ex. 6 ¶ 13. Mr. Hancock did not pick up either call. Claimant's counsel left voice messages on both lines, again requesting to meet and confer regarding the motion to confirm the final arbitration award. *Id.* Mr. Hancock did not respond. *Id.* On March 3, 2026, Claimant's counsel again called Mr. Hancock on both his office and cellular telephones. Ex. *Id.* ¶ 14. Again, Mr. Hancock did not pick up. Claimant's counsel again left voice messages on both lines again requesting to meet and confer regarding the motion to confirm the final arbitration award. *Id.* Mr. Hancock did not respond to that request, but he sent an email later than day stating that he will soon speak with local counsel. Ex. 3. The next morning, March 4, 2026, Claimant's counsel Mark Potashnick,

27

Jeremiah Frei-Pearson and Carlos Hurtado-Esteve attempted to discuss PJ Cheese's response to the Motion to Confirm Final Arbitration Award with Mr. Hancock on a Teams videoconference. Mr. Hancock expressly refused to discuss that issue, then threatened to hang up from the Teams conference if Claimant's counsel did not change the subject, then Mr. Hancock abruptly hung up and left the Teams conference. Ex. 6 ¶ 15. Immediately afterwards, Claimant's counsel emailed Mr. Hancock asking him to rejoin the Teams conference, but Mr. Hancock failed to rejoin that conference. *Id.*; Ex. 31. Thus, Claimant has made all possible efforts to meet and confer, but Mr. Hancock has expressly refused to respond.

The conference occurred via Teams video conference on March 4, 2026, at 10:30 a.m. eastern time.

Respectfully submitted this 4th day of March 2026

ARCADIER, BIGGIE, AND WOOD, PLLC.

*/s/ Joseph C. Wood, Esquire*
Joseph C. Wood, Esquire
Lead Counsel

WEINHAUS & POTASHNICK

*/s/ Mark Potashnick*
Mark A. Potashnick
*Pro Hac Vice*-Pending

28

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the original of the foregoing was filed with the

Clerk of Court by using the CM/ECF system on this 4th day of March 2026.

ARCADIER, BIGGIE, AND WOOD, PLLC.

*/s/ Joseph C. Wood, Esquire*
Joseph C. Wood, Esquire
Florida Bar No.: 0093839
2815 W. New Haven, Suite 304
Melbourne, Florida 32904
Primary Email: office@ABWlegal.com
Secondary Email: wood@ABWlegal.com
Phone: (321) 953-5998
Fax: (321) 953-6075
LEAD Counsel for Plaintiff

*/s/ Mark Potashnick*
Mark A. Potashnick
**WEINHAUS & POTASHNICK**
11500 Olive Blvd., Suite 133
St. Louis, Missouri 63141
Tel.: (314) 997-9150 ext. 2
markp@wp-attorneys.com
*Pro Hac Vice*-Pending

*Attorneys For Claimant John O'Dell*

29