# EXHIBIT 14

AMERICAN ARBITRATION ASSOCIATION

INDIVIDUAL CLAIMANTS,                    )
                                         )
                    Claimant,            )
                                         )
        v.                               )        Case No. 01-24-0006-4854
                                         )
PJ CHEESE, INC., et al.                  )
                                         )
                    Respondent.          )
_____)

**PROCESS ARBITRATOR ORDER NO. 2**

On February 28, 2025, the undersigned was appointed by the American Arbitration Association as a Process Arbitrator in the above-captioned mass arbitration.  Claimants are represented by Mark A. Potashnick, Esq., of the firm of Weinhaus & Potashnick, 11500 Olive Boulevard, Suite 133, Saint Louis, MO 63141, and Jeremiah Frei-Pearson, Esq., and Panny Cui, Esq., of the firm of Finkelstein, Blankenship, Frei-Pearson & Garber, LLP, One North Broadway, Suite 900, White Plains, NY 10601.  Respondents are represented by William K. Hancock, Esq., of the firm of Hancock Law, LLC, 300 Office Park Drive, Suite 175, Birmingham, AL 35223.

Pending before the undersigned are three motions filed by Claimants:  a motion for sanctions relating to communications between Respondents' counsel and individual Claimants; a motion on the enforceability of a clause in some of the arbitration agreements requiring arbitrations in Alabama by Alabama-certified arbitrators; and a motion by Claimants to order Respondents to pay AAA's filing fees.

On April 16 and May 20, 2025, the undersigned heard argument on these motions.  The parties have also had an opportunity to submit memoranda on these issues.  The undersigned has considered Claimants' two letter motions (for sanctions and to invalidate a provision of the arbitration agreement)

1

dated April 10, 2025, Claimants supplemental letter motion dated April 11, 2025, Respondents' letter dated April 15, 2025, Claimants' reply dated April 16, 2025, Claimants' supplemental brief dated April 17, 2025, Respondents' further response submitted April 18, 2025, Claimants' motion to order Respondents to pay AAA fees dated April 29, 2025, Claimants' proposed order submitted May 21, 2025, Respondents' letter response dated May 27, 2025, Respondents' letter response dated May 28, 2025, Respondents' email to the undersigned dated June 13, 2025, and Claimants' email to the undersigned dated June 13, 2025.. For the reasons stated below, these motions are granted in part and denied in part.

**Procedural History**

On October 24, 2024, the AAA appointed William Lemons as Process Arbitrator. Part of his duties was to oversee the selection of merits arbitrators in accordance with AAA Mass Arbitration Supplementary Rule MA-6(c)(v). Respondents objected to Arbitrator Lemons' authority to oversee that task. Following briefing, on November 22, 2024, Arbitrator Lemons found that the AAA Mass Arbitration Supplementary Rules provided him with the power to oversee "[t]he selection process of merits arbitrators." MA-6(c)(v).

Thereafter, Arbitrator Lemons was removed as the Process Arbitrator to serve as the global mediator. When mediation failed, the undersigned was appointed as the Process Arbitrator, and held conferences with counsel on March 14, 2025, and April 3, 2025. Respondents' counsel continued to object to the authority of the Process Arbitrator and demanded that merits arbitrators be assigned immediately in all 125 arbitrations.

Following appointment as Process Arbitrator, I had several conferences with counsel where both groups expressed interest in proceeding to assign merits arbitrators to the arbitration claims. Claimants proposed that a subgroup of claims proceed first, whereas Respondents requested that all claims be assigned to merits arbitrators without delay. The claims involve approximately 125 arbitration demands filed by delivery truck drivers for Respondents who allege that they were not paid minimum wages as

2

required by the Fair Labor Standards Act ("FLSA") and various state laws.  Claimants seek actual and liquidated damages, plus attorneys' fees and costs.

In the April 3, 2025, conference call, the parties agreed to work on merits arbitrator appointments to Alabama arbitrators for those Claimants who worked in Alabama and whose contracts required arbitration by an Alabama-licensed arbitrator.  Only seven arbitrators had been identified by the AAA who were qualified Alabama arbitrators, and that number did not account for objections to any of the arbitrators in that pool.  Both parties were invited to communicate any strikes to the AAA.  Respondents stated that they would not strike anyone and Claimants agreed to communicate any strikes by April 4, 2025.  The parties also discussed and agreed to work on arbitrator assignments for at least seven of the nine Florida arbitrations.  The AAA agreed to circulate arbitrator lists and scheduled an administrative conference for the following week.

Meanwhile, Claimants requested briefing on two issues:  (i) whether a non-Alabama driver whose dispute resolution plan required assignment of an Alabama-licensed arbitrator should be assigned an Alabama-licensed arbitrator or an arbitrator licensed in the state where the claims arose or on some other basis; and (ii) whether Alabama drivers whose dispute resolution procedures did not require an Alabama-licensed arbitrator should be assigned an Alabama-licensed arbitrator to the extent that one was available, with the agreement that each arbitrator be assigned up to 5 arbitrations (or more if the parties agreed) and, if Alabama-licensed arbitrators are not available, then they should be assigned non-Alabama licensed arbitrators.  Both parties agreed to a briefing schedule on these issues, with Claimants' papers due April 10 and Respondents' papers due on April 18.

The next day, on April 4, 2025, without prior notice, PJ Cheese, Inc. and its related companies filed a federal court Petition in the Northern District of Alabama seeking to compel arbitration under FAA § 4 and seeking appointments of merits arbitrators directly by the District Court rather than following the AAA administrative appointment process.  In their Petition, the petitioners acknowledged that the federal

court Respondents (the Claimants before the AAA) already had submitted their claims to arbitration before the AAA as required by their arbitration agreements.  The Petition attached copies of each arbitration demand.  Respondents did not seek a stay or any other preliminary relief in the Northern District of Alabama action.  Claimants have since moved to dismiss that action, and that motion is pending.

Also on April 4, 2025, counsel for Respondents announced that the PJ Cheese entities were withdrawing from participating in the AAA administrative process of appointing arbitrators and that they would not be paying AAA invoices for filing fees that had been issued by the AAA in connection with its efforts to begin the process of merits arbitrator selection.  The invoices in question were emailed to counsel on April 4.  Claimants' balance of the per case fees and the arbitrator selection fees totaled $30,575 due on or before April 18, 2025; and Respondent's per case fees and arbitration selection fees totaled $161,825 also due on or before April 18, 2025 (Exhibit 3, Claimants' motion to order Respondent to pay AAA fees).

The sanctions motion submitted on April 10 arose out of events occurring on April 4 in connection with the filing of the federal court action.  It is undisputed that Respondent's counsel (Will Hancock) wrote letters directly to all Claimants informing them of the Petition.  In addition to enclosing the Petition and exhibits, the letter instructed the Claimants that "If you obtain an attorney to represent you with respect to the filed petition, please have that attorney contact me.  If you do not obtain an attorney to represent you with respect to the filed petition, please feel free to email me or mail written correspondence."

As a result of this correspondence, a group of Claimants contacted Mr. Hancock directly.  Claimant Carol Hart provided a sworn declaration that she thought that Mr. Hancock's letter came from Claimants' counsel's team.  On April 8, she emailed Mr. Hancock.  Mr. Hancock asked her if she had engaged or authorized an attorney to file an arbitration demand with the American Arbitration Association.  Ms. Hart stopped communicating with Mr. Hancock after speaking with Claimants' lawyers who were actually part of Claimants' counsel's team.  (*See* Exhibit 3, attached to claimants' April 10, 2025 motion for sanctions.)

4

Claimant Tabatha Warren provided a sworn declaration verifying that she called Mr. Hancock because she was confused by his April 4 letter. Mr. Hancock told her that she was not being sued and that there was no arbitrator. He asked her if she thought that her wages were affected, if she thought that Respondent PJ Cheese had misrepresented her wages and whether she signed a form to pursue a claim. According to her declaration, all of this occurred before he asked her if she was represented by counsel. (Declaration of Tabatha Warren dated April 21, 2025, attached to Claimants' Complaint to the Alabama State Bar Disciplinary Commission).

Claimant John Peryer provided a sworn declaration and an email string with Mr. Hancock, triggered by Mr. Hancock's April 4, 2025 ,letter to him, showing that Mr. Hancock asked him if he signed a consent to pursue a FLSA claim prior to inquiring whether Mr. Peryer was represented by an attorney. (Declaration of John Peryer dated April 21, 2025, attached to Claimants' Bar Complaint).

Claimants argue in their sanctions motion that these direct communications with their clients caused three of them to discontinue their arbitration claims. *See* Potashnick letter dated April 11, 2025 supplementing the April 10 motion for sanctions at 2. They also argue that direct communication caused Claimants' counsel to incur additional attorneys' fees to contact each of the Claimants by letter and by phone, to obtain sworn declarations and to file and support this motion.

On April 16, 2025, the undersigned had a conference call with the parties to discuss Claimants' motion for sanctions. As documented in Process Arbitrator Order No. 1, Claimants' counsel requested permission to submit supplemental briefs, which was granted. There also was an acknowledgement of near overlap of defendants in the federal court litigation with the Claimants in the AAA arbitrations. Respondent's counsel agreed to refer any questions going forward from any of the Respondents in the federal court petition directly to Claimants' counsel .

In a letter dated April 18, 2025, Mr. Hancock's disclosed that he had received phone calls from 5 Claimants, including Tabatha Warren (who called on April 7), Nolan Master (who called on April 9), Olivia

5

Hudson (who called on April 10), John Peryer (who also called on April 10) and Lashunda Powell (who called on April 14).

Meanwhile, also on April 10, Claimants filed their brief regarding the enforceability of the venue and choice of law provisions of the Dispute Resolution Procedure as agreed in the April 3 conference with both parties. Respondents' counsel responded to that brief in its letter of April 18, 2025.

On April 17, 2025, the AAA advised that the AAA would proceed with arbitrator selection upon the parties' confirmation that they had mailed the checks for their respective shares of the per case fees and arbitrator fees. Claimants' counsel confirmed that Claimants' checks to cover those AAA fees were previously mailed to the AAA. However, Respondents' counsel informed the AAA that they should not expect to receive a check for the filing fees. Mr. Hancock stated on page 4 of his April 18, 2025, letter as follows:

> Respondents are suspending their participation in the AAA's administration of arbitration demands filed with the AAA as to each driver named in the petition Respondents filed in the United States District Court for the Northern District of Alabama …. The filing of the petition which seeks the statutory appointment of individual merits arbitrators effectively removed to federal court the administrative function of appointing an arbitrator from the AAA, which failed timely to discharge that function.

On April 29, 2029, Claimants filed a motion to require Respondent to pay the AAA fees.

Each motion will be discussed below.

1.    The Motion for Sanctions.

Rule 4.2(a) of the Alabama Rules of Professional Conduct provide that "[I]n representing a client, a lawyer shall not communicate about the subject of the representation with a person a lawyer knows be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so." Claimants argue that Respondents' counsel has violated Rule 4.2(a) in connection with his written and oral communications with arbitration Claimants as set forth above. Claimants' papers confirm that they filed a complaint against the Respondents' counsel. On June 13, 2025,

the Office of General Counsel of the Alabama State Bar, issued a letter stating "In view of the nature and content of the documents reviewed, the determination has been made that no action will be taken in this matter."

Based on this decision, Respondents urge the undersigned to deny this motion.  Claimant respond that "Courts routinely sanction this behavior without giving any consideration to the decisions of bar associations.  *See, e.g., Gibson v. Credit Suisse AG*, No. 10-001, 2016 U.S. Dist. LEXIS 201178, at *15 (D. Idaho Feb. 2, 2016) (affirming sanctions against attorneys who violated the rules despite two bar associations deciding not to take action).

I find that arbitrators have the power to award sanctions in the form of attorney's fees in their final award under former Rule 39(d) of the AAA Employment Rules applicable to this proceeding.  The FLSA allows fees to Claimants if they prevail in their arbitrations.  However, because the final award will be determined by a merits arbitrator, not a process arbitrator, I deny this motion without prejudice to renew before a merits arbitrator.

2.       The Motion Regarding Appointment of Alabama-Licensed Arbitrators.

Based on Respondents' disclosures of Dispute Resolution Programs ("DRPs") to date, Claimants' counsel have identified twenty-seven Claimants who did not work or reside in Alabama but who have DRPs limiting the choice of Arbitrators to Alabama-licensed attorneys with employment law experience. They have identified eleven Claimants who worked or resided in Alabama with DRPs limiting them to the same pool:  Alabama-licensed attorneys with employment experience.  According to the AAA, the pool of qualified arbitrators for these two groups is limited to seven.  With objections yet to be exercised, this pool is likely to be smaller.  Claimants therefore move to relieve those Claimants who did not work or reside in Alabama of the arbitration provision that requires merits arbitrators to be selected from a limited pool of Alabama-licensed arbitrators.

Respondents' primary opposition to this motion is that the language in the arbitration agreements must be enforced as written. This argument is rejected because an arbitration contract is not necessarily enforced as written if clauses in it violate due process or are unconscionable.

Respondents also argue that this decision should only be made by a federal district court and that the arbitrator lacks the power to decide the enforceability of these provisions. This argument is also rejected. The DRP expressly provides that the Arbitrator has the exclusive authority to determine enforceability of the terms of the DRP (Claimants' motion to declare Alabama-licensure unenforceable, Ex. 1 at 9). Moreover, MA-6(C)(v) provides that the process arbitrator has authority to determine the selection process for Merits Arbitrators. I find that this authority includes evaluating the size of the pool of arbitrators used for merits arbitrator selection.

Adopting Respondents' position as to enforcement of the challenged clause would require that twenty-seven Claimants with no contact with Alabama share a limited pool of seven Alabama-licensed arbitrators with eleven Alabama-based Claimants. This creates a particularly one-sided (because Alabama has no wage code) and small pool which impairs Claimants' rights to make a meaningful selection of merits arbitrators. *Hooters v. Phillips*, 173 F3d 933 (4th Cir. 1999) (striking down as unconscionable arbitration selection methods that allow one party to limit the selection of arbitrators to such a degree that the claimant has no effective choice); M*cMullen v. Meijer*, 355 F.3d 485, 488, 492-94 (6th Cir. 2004) (employer plan that used the same pool of 5-7 arbitrators for all arbitration in Michigan was unenforceable).[1]

For these reasons I find that the clause requiring Claimants who neither lived nor worked in Alabama to use Alabama-licensed arbitrators is not workable as a practical matter given the limited size of the pool.

---

[1] The question of enforcing a clause of this type against Claimants with no contacts with Alabama is another question, which Claimants agree is for the merits arbitrators.

8

3. The Motion to Order Respondents to Pay AAA Fees.

The final motion is Claimants' motion to order Respondents to pay their share of the per case fees and arbitrator selection fees so that arbitrator selection can proceed. It is undisputed that in various conference calls with the AAA between the summer of 2024 and the Spring of 2025, the AAA informed the parties that it would charge them per case fees and arbitrator selection fees prior to selection of merits arbitrators.

On April 3, 2025, AAA informed the parties that it would soon provide them with invoices for those fees. On April 4, 2025, AAA emailed counsel for the parties and advised them that (1) Claimants' fees of $125 per case and arbitrator selection fees of $150 per case were due, for a total of $30,575 after accounting for the initial fee payment and any overages, and (2) Respondents' fees of $325 per case and arbitrator selection fees of $1,100 per case were due, for a total of $161,825 after accounting for the initiation fees and any overages. It is also undisputed that Respondents repeatedly asked the AAA and the Process Arbitrator to begin the process of appointing merits arbitrators. The fees billed by AAA to Respondents have not been paid except for 14 files.[2]

I find that as process arbitrator I have the power under the AAA rules to order parties to pay AAA's fees. The AAA Mass Supplemental Rule MA-6(c)(iii) provides that "the process arbitrator shall have the authority to determine . . . [d]isputes regarding payment of administrative fees, arbitrator compensation and expenses." AAA Mass Arbitration Supplemental Rule MA-6(c)(xi) generally provides that "any process arbitrator shall have the authority to determine . . . [a]ny other non-merit issues affecting case administration arising out of the nature of the mass arbitration that the process arbitrator determines is appropriate for determination." Finally, AAA Employment Arbitration Rule 39(d) also gives arbitrators the power to order parties to pay AAA's fees. That rule provides that: "In the event any administrative fees

---

[2] Under the AAA Rules, the opposing party has the option to pay unpaid fees. Here, Claimants have paid Respondents' invoices for 14 of the arbitrations, in addition to paying their own fees.

or expenses are due the AAA," an arbitrator may order payment of such fees "subject to the provision contained in [the AAA's] cost of arbitration section." *Id. Cf Dealer Computer Serv. v. Old Colony Motors, Inc.,* 588 F.3d 884, 888 (5th Cir. 2009); *accord, Beffa v. Pierce,* 2022 Cal. Super. LEXIS 63571, at *667 (Sup. Ct. of LA Cnty. Oct. 3, 2022) (quoting arbitrator ordering respondent in an AAA employment arbitration to pay AAA administrative fees according to a schedule set by the arbitrator); *Stephanie A. v. Gold Club of Tampa, Inc.,* 2020 US Dist. LEXIS 129334, at *12-13 (MD Florida July 22, 2020) (the AAA employment rules allow arbitrators to order parties to pay AAA fees upon their failure to pay). *See also Sullivan v. PJ United, Inc., et al.,* 2016 US Dist. LEXIS 117841, at *78 (MD Alabama Aug. 10, 2016) ("Although Defendants disagree with the arbitrators' allowance of a collective proceeding, they do not have the right to completely disrupt arbitration over this disagreement").

Payment of the invoice fees will enable the AAA to appoint merits arbitrators to hear the 127 arbitration cases on an individual basis and thus advance the administration of the disputes. For these reasons, Respondents are ordered to pay their per case fees and arbitrator selection fees as invoiced by the AAA within thirty (30) days of this order.

## CONCLUSION

For the forgoing reasons, (1) the motion for sanctions is denied without prejudice to renew before a merits arbitrator; (2) the motion to declare invalid the dispute resolution provision that limits certain non-Alabama claimants to Alabama-licensed arbitrators is granted to the extent necessary to increase the size of the pool of possible arbitrators; and (3) the motion to order Respondents to pay AAA fees is granted, and Respondents are ordered to do so within thirty days of this order.

Dated: June 20, 2025

_____
Carol E. Heckman

10