**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

JOHN O'DELL,                           )
                                       )        Case No. 6:26-cv-00406-ACC-RMN
                    Petitioner,        )
                                       )
        v.                             )
                                       )
PJ CHEESE, INC.,                       )
                                       )
                    Respondent.        )

**PETITIONER'S RESPONSE TO DEFNDANT'S MOTION TO
VACATE, MODIFY, OR CORRECT ARBITRATION AWARD**

## **TABLE OF CONTENTS**

I.   INTRODUCTION ..................................................................................................1

II.  STATEMENT OF FACTS ................................................................................... 1

III. ARGUMENT ....................................................................................................... 2

   A.  Applicable Legal Standard ...............................................................................2

   B.  PJ Cheese's Argument That Judge Green Failed To Even Arguably
       Consider The Arbitration Agreement Ignores The Evidence ...........................2

   C.  Judge Green Acted Within Her Authority Under
       The Arbitration Agreement ...............................................................................5

   D.  Arbitrator Did Not Impose Her Own Policy Choice By Awarding
       Reimbursements ...............................................................................................10

   E.  The Court Should Deny PJ Cheese's Demand For Reasoned Analysis Of
       The Body Of Law Regarding Tax Refund Claims ..........................................11

   F.  There Was A Clear Contractual Basis For Mass Arbitration ........................15

   G.  The Arbitration Agreement Does Not Bar The AAA's
       Mass Arbitration   Process ..............................................................................17

IV.  CONCLUSION .................................................................................................. 20

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Abrahamyan v. Citibank N.A.*,
No. 24-01106, 2025 U.S. Dist. LEXIS 90158 (C.D. Cal. May 9, 2025) ............. 15

*Arriaga v. Fla. Pac, Farms, L.L.C.*,
305 F.3d 1228 (11th Cir. 2002) .......................................................... 3, 7, 8, 11

*Brown v. Steak N Shake, Inc.*,
No. 21-4474, 2023 U.S. Dist. LEXIS 248826 (N.D. Ga. May 17, 2023) ........... 19

*Bruno's, Inc. v. UFCW Local Union 1657*,
858 F.2d 1529 (11th Cir. 1988) ................................................................... 10

*Cattau v. Nat'l. Ins. Servs.*,
865 N.W.2d 215 (Wis. App. Apr. 29, 2015) .................................................. 13

*Childers v. N.Y. & Presbyterian Hosp.*,
36 F. Supp. 3d 292 (S.D.N.Y. 2014) ....................................................... 13, 14

*Davidson v. Henkel Corp.*,
No. 12-14103, 2013 U.S. Dist. LEXIS 103185 (E.D. Mich. July 24, 2013) ....... 13

*Davidson v. Henkel Corp.*,
No. 12-14103, 2015 U.S. Dist. LEXIS 722 (E.D. Mich. Jan. 6, 2015) .............. 12

*Davidson v. Henkel Corp.*,
No. 12-14103, 2013 U.S. Dist. LEXIS 103185 (E.D. Mich. July 23, 2013) ....... 14

*Davis v. Prudential Sec., Inc.*,
59 F.3d 1186 (11th Cir. 1995) .................................................................. 9-10

*Diamond Resorts U.S. Coll. Dev., LLC v. Johnson*,
No. 18-90, 2018 U.S. Dist. LEXIS 178135 (M.D. Fla. Oct. 17, 2018) ................. 1

*EEOC v. Cnty. of Erie*
751 F.2d 79 (2d Cir. 1984)......................................................................... 15

*Epic Sys. Corp. v. Lewis*,
584 U.S. 497 (2018) .................................................................................. 19

*Fata v. Pizza Hut of Am., Inc.*,
No. 14-376, 2016 U.S. Dist. LEXIS 153545 (M.D. Fla. Aug. 5, 2016) .......... 8, 11

ii

*Gherardi v. Citigroup Global Mkts., Inc.,*
  975 F.3d 1232 (11th Cir. 2020) ................................................................. *passim*

*Hidroelectrica Santa Rita S.A. v. Corporacion AIC, SA*,
  119 F.4th 920 (11th Cir. 2024) ......................................................... 2, 15, 17

*Interstate Brands Cor. v. Local 441 Retail, Wholesale & Dep't. Store Union*,
  39 F.3d 1159 (11th Cir. 1994) ...................................................................... 10

*Lin v. New Fresco Tortillas, Inc.*,
  No. 18- 3246, 2019 U.S. Dist. LEXIS 74505 (E.D.N.Y. May 1, 2019) ............... 9

*Lin v. New Fresca Tortillas, Inc.*,
  No. 18- 3246, 2019 U.S. Dist. LEXIS 95197 (E.D.N.Y. May 28, 2019) ............. 9

*Llorca v. Sheriff, Collier Cnty.*,
  893 F.3d 1319 (11th Cir. 2018) ................................................................. 14-15

*MacClelland v. Cellco P'ship.*,
  609 F. Supp. 3d 1024 (N.D. Cal. 2022) ......................................................... 15

*Marine v. Viejo Quisqueya Rest. Corp.*,
  No. 20-4671, 2022 U.S. Dist. LEXIS 162555 (E .D.N.Y. Sept. 8, 2022) ............. 9

*Mikulski v. Centerior Energy Corp.*,
  501 F.3d 555 (6th Cir. 2007) ................................................................. 13, 14

*Nalco Co. LLC v. Bonday*,
  142 F.4th 1336 (11th Cir. 2025) ..................................................................... 9

*Oxford Health Plans LLC v. Sutter*,
  569 U.S. 564 (2013) ......................................................... 2, 11, 12, 15

*Perez v. Glob Airport Sec. Servs.*,
  253 F.3d 1280 (11th Cir. 2001) ..................................................................... 11

*Perez v. W. Side Pizza, LLC*,
  Mo. 18-5834, 2024 U.S. Dist. LEXIS 62588 (S.D.N.Y. Apr. 4, 2024) ............... 9

*Rahman v. Red Chili Indian Café, Inc.*,
  No. 17-5156, 2024 U.S. Dist. LEXIS 214360 (S.D.N.Y. Nov. 22, 2024) .......... 8-9

*Reach Air Med. Servs. LLC v. Kaiser Found. Health Plan Inc.*,
  160 F.4th 1110 (11th Cir. 2025) ..................................................................... 2

*Reyes v. Coppola's Tuscan Grill, LLC*,
  No. 21-7040 , 2023 U.S. Dist. LEXIS 103745 (S.D.N.Y. June 13, 2023) ............ 9

iii

*Reyes v. Coppola's Tuscan Grill, LLC*,
  No. 21-7040 , 2023 U.S. Dist. LEXIS 113332 (S.D.N.Y. June 30, 2023) ............ 9

*S. Commun's. Servs. v. Thomas*,
  720 F.3d 1352 (11th Cir. 2013) ................................................................ *passim*

*Sarwi v. PJ Cheese, Inc.*,
  AAA Case No. 01-22-0002-1162 (Green Mar. 6, 2023) ...................................... 7

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l. Corp.*,
  559 U.S. 662 (2010) ................................................................................ *passim*

*Ullom v. Bill Perry & Assocs.*,
  No. 20-266, 2021 U.S. LEXIS 99610 (M.D. Fla. May 26, 2021) ............... 7, 8, 11

*Viking River Cruises, Inc. v. Moriana*,
  596 U.S. 639 (2022) ................................................................................... 18

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ................................................................................... 18

## Statutes

15 U.S.C. Section 1514A .................................................................................. 6
26 U.S.C. § 7422 ................................................................................... 6, 11, 12
29 U.S.C. § 201 ................................................................................................ 6
29 U.S.C. § 216 ............................................................................................... 19
29 U.S.C. § 1002 ............................................................................................. 12
Fla. Stat. § 448.110 .......................................................................................... 6
IRC § 7422 ........................................................................................ 11, 12, 13, 14

## Other

29 C.F.R. § 531.35 ..................................................................................... 3, 4, 8
Fla. Const. Art. X § 24 ............................................................................... 3, 6, 15

## I.    INTRODUCTION

Although Respondent PJ Cheese, Inc. ("PJ Cheese") tacitly acknowledges the applicable standard, specifically that the Court must confirm the final arbitration award if the arbitrator "even arguably" considered the parties' agreement, PJ Cheese devotes most of its Motion to strenuously rearguing the merits of the underlying arbitration.  Hence, PJ Cheese has failed in its recognized "very high" burden to avoid confirmation. *Diamond Resorts U.S. Coll. Dev., LLC v. Johnson*, 2018 U.S. Dist. LEXIS 178135, at \*5 (M.D. Fla. Oct. 17, 2018) ("very high" burden). The evidence detailed below, and in Claimant John O'Dell's previously-filed Motion to Confirm Arbitration Award, shows that the arbitrators, at the very minimum, considered the parties' agreement. This should end the Court's inquiry.

Nonetheless, Mr. O'Dell further shows that the arbitrators ruled on an issue that the parties agreed to arbitrate and that those rulings were consistent with the parties' agreement and applicable law. The arbitrators did not merely dispense their own brand of justice. Although there is no need to consider the merits, all three arbitrators – William Lemons, Judge Carol Heckman (Ret.), and Judge Melvia Green (Ret.) -- decided the issues correctly on the merits.[1]

## II.    STATEMENT OF FACTS

To avoid duplicative briefing, Petitioner incorporates by reference the Factual Background section of his previously-filed Motion to Confirm Arbitration Award and

---

[1] Exhibits 1-33 were filed with Mr. O'Dell's opening brief on March 4, 2026. *See* ECF 9.

Memorandum in Support Thereof. ECF 9 at 2-12.

### III.   ARGUMENT

#### A.   Applicable Legal Standard

Again, to avoid duplication, Petitioner incorporates the legal standards set forth in in detail in his Motion to Confirm Arbitration Award. ECF 9 at 13-18.

#### B.   PJ Cheese's Argument That Judge Green Failed To Even Arguably Consider The Arbitration Agreement Ignores The Evidence

The evidence belies PJ Cheese's argument that Judge Green failed to even arguably consider the parties' arbitration agreement, which incorporates a "Dispute Resolution Plan" or "Dispute Resolution Program" ("DRP"). As Mr. O'Dell previously showed, the sole question for the Court is whether Judge Green even arguably based her decision on the parties' agreement. *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013); *Reach Air Med. Servs. LLC v. Kaiser Found. Health Plan Inc.*, 160 F.4th 1110, 1120 (11th Cir. 2025).

The Eleventh Circuit recognizes that showing that an arbitrator "even arguably interpreted" the parties' agreement can entail as little as pointing to the arbitrator referencing terms of that agreement. *See, e.g., Hidroelectrica Santa Rita S.A. v. Corporacion AIC, SA*, 119 F.4th 920, 926 (11th Cir. 2024) ("The Tribunal's explanations evidence that it engaged with the contract's language, thereby sticking to '[its] delegated task of interpreting a contract' and acting within the bounds of its authority.'") (citing *Oxford Health Plans,* 569 U.S. at 572); *S. Commun's. Servs. v. Thomas,* 720 F.3d 1352, 1359-60

(11th Cir. 2013) (finding that the arbitrator arguably interpreted the parties' contract because the arbitrator "recounting the text of the contract's arbitration clause" adopting AAA rules, which ended the inquiry).

At minimum, Mr. O'Dell shows that Judge Green referenced and considered relevant terms of the parties' agreement. That is sufficient to show that she arguably considered that agreement. *Id.* Such evidence includes, but is not limited to:

1. Judge Green's confirmed that she was "designated in  accordance with the arbitration agreement dated on or about September 2021…" (Ex. 1 at 1);

2. Judge Green's Final Award "fully incorporated" her November 17, 2025 Order, in which she held that PJ Cheese must pay Mr. O'Dell "reimbursements" pursuant to her analysis of the Fla. Const. Art. X § 24 and the FMWA (referenced by Judge Green as "the FMWL") and pursuant to the Eleventh Circuit's decision in *Arriaga v. Fla. Pac, Farms, L.L.C.*, 305 F.3d 1228, 1237 (11th Cir. 2002) (citing 29 C.F.R. § 531.35), statutes Judge Green was required to apply pursuant to the arbitration agreement's choice of law provision (Ex. 1 at 4-9; Ex. 4 at 5 ("The arbitrator shall apply the substantive law and the laws of remedies, if applicable, in the state in which the claim arose or federal law or both, depending upon the claims asserted."));

3. Judge Green references terms of the DRPs purporting to "requir[e] assignment of an Alabama-licensed arbitrator" (*id.* at 8);

4. Judge Green referenced "Judge Heckman's Order No. 2 dated June 20, 2025" that "granted the Motion to declare invalid and unenforceable the

3

DRP that limited certain non-Alabama Claimants to Alabama-licensed arbitrators to the extent necessary to increase the size of the pool of possible arbitrators" (*id.* at 10);

5. Judge Green concluded that "Claimant O'Dell is *contractually entitled* to recoup his reasonable attorney's fees for [a] related federal proceeding pursuant to the parties' Dispute Resolution Program (DRP)" which provides that "[i]f either party pursues a legal claim covered by the Dispute Resolution Program in court by any means other than arbitration, the responding party shall be entitled to stay or dismissal of such action, the remand of such action to arbitration, and the recovery of all costs and attorney's fees and expenses related to such action" (*id.* at 12-13 & n.3 (emphasis added));

6. Judge Green's Final Award "adopted and incorporated … in its entirety as Exhibit 2 … the Process Arbitrator's June 20, 2025 Order No. 2 entered by the Hon. Carol E. Heckman (Ret.)" which references the same DRP provisions requiring Alabama-licensed arbitrators (Ex. 14 at 3);

7. Judge Green's Final Award incorporated the June 20, 2025 Order finding that "arbitrators have the power to award sanctions in the form of attorney's fees in their final award under former Rule 39(d) of the AAA Employment Rules applicable to this proceeding," noting that rules is applicable pursuant to the DRP (requiring that "[t]he agency [AAA] will administer any arbitration under the AAA's 'Employment Arbitration Rules and Mediation Procedures'…") (Ex. 1 at 7; Ex. 4 at 5);

4

8. Judge Green incorporated the June 20, 2025 Order in which Judge Heckman exercised her power granted under the DRP "to resolve any dispute relating to the interpretation, arbitrability, applicability, *enforceability* or formation of the agreement to arbitrate including, but not limited to, any claim that all or any part of the agreement to arbitrate is void or voidable" by deciding that the DRP's restriction to Alabama-licensed attorneys is invalid (Ex. 4 at 6 (emphasis added); Ex. 3 at 8 (explaining that "Respondents' primary opposition to this motion is that the *language in the arbitration agreements* must be enforced as written. The argument is rejected because an arbitration contract is not necessarily enforced as written if clauses in it violate due process or are unconscionable) (emphasis added), *id.* (recognizing that "[t]he DRP expressly provides that the Arbitrator has the exclusive authority to determine enforceability of the terms of the DRP"); and

9. Judge Green incorporated the June 20, 2025 Order in which Judge Heckman concluded that she has "the power under the AAA rules to order parties to pay AAA's fees" such as AAA Employment Rule 39(b), pursuant to the DRP (Ex. 4 at 5 ("The agency will administer any arbitration under the AAA's 'Employment Arbitration Rules and Mediation Procedures'…")).

## C.  Judge Green Acted Within Her Authority Under The Arbitration Agreement

PJ Cheese argues that Judge Green exceeded her authority by deciding a tax

5

refund, which PJ Cheese argues is a remedy the parties did not agree to arbitrate. That argument suffers from at least two glaring flaws: (1) from the beginning, Claimant expressly sought "reimbursement" of job expenses, (2) the DRP provides that arbitrators may award any remedy that a court may award, and the remedy of reimbursements in minimum wage claims based on under-reimbursed job expenses is well-recognized, including controlling Eleventh Circuit authority.

The DRP broadly defines "legal claims" subject to arbitration as any "statutory or common law claim." Ex. 4 at 2. That broad definition clearly includes Mr. O'Dell's Fair Labor Standard Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, Florida Constitution Art. X § 24, and the Florida Minimum Wage Act ("FMWA"), Fla. Stat. § 448.110 claims. *Id.*; Ex. 4. The DRP further provides that "[t]he only claims or disputes not subject to arbitration are as follows:

- any claim by an employee for benefits under a plan or program which provides its own binding arbitration procedure
- any statutory workers' compensation claim
- unemployment insurance claims
- any lawful claim(s) brought under the Dodd Frank Act's whistleblower protection, pursuant to 15 U.S.C. Section 1514A, *et. seq.*, is exempted from this DRP plan."

*Id.* at 4.  None of those exceptions apply here. *Id.*

As further explained below, courts recognize that tax issues preemption under 26 U.S.C. § 7422 depends on the original nature of the claim. From the beginning, Claimant expressly sought "reimbursements" of job expenses to restore his minimum wages, not recovery of tax deductions. *See, e.g.,* Fla. Pre-Suit Notice dated July 29, 2024 (Ex. 5) at 3 ("…please pay $9,817.50 [] *as reimbursement for vehicle costs* within 15

6

days of receipt of this letter if you seek to avoid a Florida minimum wage claim."
(emphasis added)); Amended Fla. Pre-Suit Notice dated July 31, 2024 (Ex. 37) at 2
("please pay $7,286.68 [] *as reimbursement for vehicle costs* within 15 days of receipt of
this letter if you seek to avoid a Florida minimum wage claim" (emphasis added));
Statement of Claim ("SOC") (Ex. 9) ¶ 41 (quoting *Sarwi v. PJ Cheese, Inc.*, AAA Case
No. 01-22-0002-1162 (Green Mar. 6, 2023) (Ex. 34) at 3-4 & n.2 (holding that "[a]s a
matter of law, employees' minimum wages are restored through *awards of*
*reimbursements* in minimum wage claim disputes based upon unreimbursed job costs."
(emphasis added)) (citing *Arriaga*, 305 F.3d 1228; *Ullom v. Bill Perry & Assocs.*, 2021
U.S. LEXIS 99610, at *11-12 (M.D. Fla. May 26, 2021) (awarding the plaintiff
"mileage owed to remedy kickback from overtime")); Ex. 35 at 2 ("Mr. O'Dell seeks
payment of the remaining reimbursement due, totaling $3,063.47"); *id.* at 3 ("All
relevant authority shows that the recovery is reimbursements, not taxes, as Your
Honor previously held." (caps removed)); *id.* at 3-8 (detailed argument that recovery
sought is reimbursements, not taxes).

Consistent with his original claim, Judge Green awarded Mr. O'Dell "$3,063.47
for "*reimbursement*" for job expenses as a remedy in his successful FLSA and Florida
claims. Ex. 14 at 2. She never ordered PJ Cheese to refund taxes it previously
deducted. *Id.*; *see also, e.g.,* Ex. 22 at 8 (holding that "Claimant O'Dell is entitled to an
*award of unreimbursed work expenses* from PJ Cheese totaling $3,063.47…" (emphasis
added)); *id.* at 9 ("…PJ Cheese should have properly classified this $3,063.47 as

7

*reimbursable job expense* to Mr. O'Dell…" (emphasis added)). Even if Judge Green's conclusion was wrong, her Final Award must be confirmed per Eleventh Circuit law. *Stolt-Nielsen S.A. v. AnimalFeeds Int'l. Corp.*, 559 U.S. 662, 671-72 (2010)); *Gherardi v. Citigroup Global Mkts., Inc.*,  975 F.3d at 1238 (11th Cir. 2020).

The DRP expressly granted Judge Green the power to award reimbursements. It broadly provides that "[i]f you win, the arbitrator can award you anything you might seek through a court of law." Ex. 4 at 3, Step 4, ¶ 4. The remedy of reimbursements in minimum wage claims based on under-reimbursed job costs is well-recognized. In fact, in *Arriaga*, the Eleventh Circuit held that "[i]f an expense is determined to be primarily for the benefit of the employer, *the employer **must reimburse** the employee during the workweek in which the expense arose.*") 305 F.3d at 1237 (emphasis added, citing 29 C.F.R. § 531.35); *see also, id.* ("***Workers must be reimbursed*** during the first workweek for pre-employment expenses which primarily benefit the employer, to the point that wages are at least equivalent to the minimum wage.") (emphasis added); *id.* ("the Growers *must reimburse* the Farmworkers up to the point that their wages satisfy the FLSA minimum wage") (emphasis added).

District courts in the Eleventh Circuit likewise recognize that reimbursements are awarded to remedy in minimum wage violations resulting from under-reimbursed job costs. *See, e.g., Ullom*, 2021 U.S. LEXIS 99610, at *11-12 (awarding the plaintiff "mileage owed to remedy kickback from overtime"); *Fata v. Pizza Hut of Am., Inc.*, 2016 U.S. Dist. LEXIS 153545, at *20 (M.D. Fla. Aug. 5, 2016) (approving settlement

agreement of FLSA and FMWA claims by pizza drivers that contained an express provision that recovery of "'reimbursement' for job expenses will be non-taxable.").

*Accord, Rahman v. Red Chili Indian Café, Inc.*, 2024 U.S. Dist. LEXIS 214360, at *27-28 & *35-36 (S.D.N.Y. Nov. 22, 2024) (awarding $1,130.00 for "'tools-of-the-trade' damages" to delivery worker for bicycle purchase and repair separately, in addition to awarding him "$17,354.25 in unpaid minimum and overtime wages" in other claims); *Perez v. W. Side Pizza, LLC*, 2024 U.S. Dist. LEXIS 62588, at *17-18 (S.D.N.Y. Apr. 4, 2024) (awarding two plaintiffs a total of $1,560.00 for "tools of the trade damages" for purchase of bicycles, a helmet, chain, lock, and bicycle repairs separately, in addition to awarding them $98,838.25 total "wage damages" in other claims); *Reyes v. Coppola's Tuscan Grill, LLC*, 2023 U.S. Dist. LEXIS 103745, at *32-33 (S.D.N.Y. June 13, 2023), adopted at 2023 U.S. Dist. LEXIS 113332 (S.D.N.Y. June 30, 2023); *Marine v. Viejo Quisqueya Rest. Corp.,* 2022 U.S. Dist. LEXIS 162555, at *22 & *30 (E .D.N.Y. Sept. 8, 2022); *Calle v. Pizza Palace Cafe LLC,* 2022 U.S. Dis. LEXIS 1708, at *29-30 (E.D.N.Y. Jan. 4, 2022); *Lin v. New Fresco Tortillas, Inc.,* 2019 U.S. Dist. LEXIS 74505, at *11-12 (E.D.N.Y. May 1, 2019) (awarding plaintiff $15,999.82 "as reimbursement of motorcycle costs."), report and recommendation adopted at 2019 U.S. Dist. LEXIS 95197 (E.D.N.Y. May 28, 2019).

PJ Cheese's cases vacating arbitration awards based on claims *not submitted to arbitrators / not raise by claimants* are easily distinguished. As shown above, Mr. O'Dell expressly sought "reimbursements" for his job expenses *ab initio.* Exs. 5-6, 37. PJ Cheese's cases concern arbitrators deciding claims never asserted by claimants and/or

9

remedies never sought by claimants. *See, e.g., Nalco Co. LLC v. Bonday*, 142 F.4th at 1340 (11th Cir. 2025) (vacating arbitration award because arbitrator granted relief on ERISA claim that the claimant never asserted); *Davis v. Prudential Sec., Inc.*, 59 F.3d 1186, 1195 (11th Cir. 1995) (vacating arbitration award of fees because claimant did not seek fees in arbitration; but confirming rest of award); *Interstate Brands Cor. v. Local 441 Retail, Wholesale & Dep't. Store Union*, 39 F.3d 1159, 1162 (11th Cir. 1994) (arbitrator based his award on violating DOT regulations when the union alleged breach of contract).

PJ Cheese seeks to rely on other cases in which courts reached the unremarkable finding that the arbitrator's action fell outside the scope of the arbitration agreement. Those decisions are fact-specific based on the arbitration agreement language and the claims asserted, and thus inapplicable here. For example, in *Bruno's, Inc. v. UFCW Local Union 1657,* 858 F.2d 1529, 1531 (11th Cir. 1988), the court vacated an arbitration award because the arbitration agreement only gave the arbitrator power to decide grievances, but the arbitrator purported to establish new work rules. *Id.* at 1531. Judge Green did no such thing. The DRP expressly affords her the power to grant the same remedies as courts (Ex. 4 at 3, Step 4, ¶ 4), as she did by awarding reimbursements.

## D.   Arbitrator Did Not Impose Her Own Policy Choice By Awarding Reimbursements

In a similar argument, PJ Cheese contends that Judge Green exceeded her powers because "instead of identifying and applying a rule of decision derived from

the FAA or [applicable] law, the arbitration panel impose[s] its own policy choice and thus exceed[s] its powers." ECF 26 at 9-10 (edits by Respondent) (citing *Stolt-Nielsen*, 559 U.S. at 676-77). Here, the applicable rule of decision derived from the FAA is obviously that "private agreements to arbitrate are enforced according to their terms." *Stolt-Nielsen*, 559 U.S. at 682.[2] Judge Green awarded "reimbursements," a remedy she was expressly empowered to award under the DRP. Ex. 4 at 3, Step 4, ¶ 4 ("If you win, the arbitrator can award you anything you might seek through a court of law."). Moreover, the applicable rule of law is that reimbursements are a proper remedy recognized by the Eleventh Circuit and other courts. *See, e.g., Arriaga*, 305 F.3d at 1237; *Ullom*, 2021 U.S. LEXIS 99610, at *11-12; *Fata*, 2016 U.S. Dist. LEXIS 153545, at *20. Thus, Judge Green followed both the applicable rule of decision rooted in the FAA and applicable law. That is far different from imposing her own choice of policy.

**E.     The Court Should Deny PJ Cheese's Demand For Reasoned Analysis Of The Body Of Law Regarding Tax Refund Claims**

PJ Cheese devotes a large part of its Motion to Vacate to an improper attempt to persuade the Court to take a "deep dive" into the contours of tax claim preemption under 26 U.S.C. § 7422(a). In doing so, PJ Cheese seeks to convince the Court that Judge Green incorrectly decided the legal issue of whether Mr. O'Dell's recovery was reimbursement or tax deductions. ECF 26 at 10-17. Controlling Eleventh Circuit law

---

[2] But of course, unlawful provisions within arbitration agreements are not enforced. *See, e.g., Perez v. Glob Airport Sec. Servs.*, 253 F.3d 1280, 1286 (11th Cir. 2001).

holds that such analysis of the merits (basically a district court's *de novo* review of the law) falls well outside the proper district scope of review. *Oxford Health Plans*, 569 U.S. at 569; *Gherardi*, 975 F.3d at 1238-39. Again, courts must confirm a final arbitration award if the arbitrator "even arguably" interprets the agreement. *Id.*

Even if PJ Cheese's attempt to argue § 7422 preemption could be considered at this stage (it cannot), PJ Cheese's cases are inapposite. Those cases all concern obvious efforts to obtain tax refunds. Alternatively stated, none of PJ Cheese's cases concerns minimum wage violations resulting from unreimbursed job costs, where reimbursements (not tax withholdings) are the recognized remedy. *Arriaga, Ullom, etc.* As an even broader distinction, none of PJ Cheese's cases concern claims based on legal theories other than improper withholding, where increased tax liability is merely a consequence of the defendant's action. If the merits of Judge Green's decision were actually at issue on motions to confirm or vacate, that difference may form the critical distinction. However, examination of that legal issue falls well outside the scope of review. *Oxford Health Plans*, 569 U.S. at 569; *Gherardi*, 975 F.3d at 1238-39.

Courts recognize that 26 U.S.C. § 7422 does not preempt claims challenging an action *other than* tax collection or withholding that has the impact of increasing tax liability. A prime example is *Davidson v. Henkel Corp.*, 2015 U.S. Dist. LEXIS 722 (E.D. Mich. Jan. 6, 2015). The plaintiffs sued under ERISA, 29 U.S.C. § 1002 *et seq.*, alleging that the plan administrator *breached an employee benefit plan's terms* by failing to withhold taxes on the plan participants' funds while those funds were under the plan

administrator's control. *Id.* at *2021. The plaintiffs further alleged that the administrator's failure to comply with the plan terms caused them to pay additional taxes. *Id.* at *22. The defendants argued that the plaintiffs' claims were preempted by 26 U.S.C. § 7422 because the plaintiffs sought a "tax refund in disguise." *Id.* at *7. The *Davidson* court held that IRC § 7422 did not preempt the claim. The court explained that "[t]his case is not about how Defendants resolved the FICA issue *after* it arose, but instead about how the FICA issue came about in the first place. Intrinsically, this case is not about taxes, but is instead about Defendants' administration of the Plan." *Id.* at *8. *Davidson* further emphasized that "[t]he mere fact that the plaintiffs' damages are calculated in terms of [] taxes does not necessitate the conclusion that the plaintiffs claim[s] must actually be … for a federal income tax return." *Id.* at *11 (citing *Childers v. N.Y. & Presbyterian Hosp.*, 36 F. Supp. 3d 292, 304 (S.D.N.Y. 2014) (edits in *Childers*) (citing *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 565 (6th Cir. 2007) (*en banc*)); *see also Davidson v. Henkel Corp.*, 2013 U.S. Dist. LEXIS 103185, at *14 (E.D. Mich. July 24, 2013) (rejecting defendants' argument that § 7422 bars the claim because "Plaintiff is not challenging Defendants' withholding of FICA taxes, rather he is challenging their failure to follow the special timing rule [required by the plan's terms] resulting in a reduction of his benefits.").

As another example, in *Cattau v. Nat'l. Ins. Servs.,* 865 N.W.2d 215 (Wis. App. Apr. 29, 2015), retirees alleged that the defendants failed to administer a retirement plan in accordance with their duties, representations, and contracts, and the retirees

suffered damages as a result. *Id.* ¶ 10. The defendants argued that the retirees were attempting to "circumvent" the law to obtain tax advantages. *Id.* The court held that the defendants "miss the fundamental aspect of the amended complaint—the Retirees have not brought a suit or a proceeding 'for the recovery of any internal revenue tax.'" *Id.* The court further explained that "[i]f they had, we would agree that § 7422 would apply." *Id.* The court then distinguished a claim to enforce the benefit plan terms from a claim for a tax refund. *Id.* Like *Davidson*, the *Cattau* court further explained that "[t]he mere fact that the plaintiffs' damages are calculated in terms of overpaid income taxes does not necessitate the conclusion that the plaintiffs' claim must actually be one for a federal income tax refund.'" *Id.* (quoting *Mikulski*, 501 F.3d at 565).

In *Childers*, medical students and residents sought to recover FICA taxes withheld by hospitals affiliated with their medical schools as a result of the defendants' breach of settlement agreement terms. 36 F. Supp. 3d at 303. The court held that "§ 7422 does not apply to Plaintiffs' claims because these are not suits for a tax refund." *Id.* The court further explained that "Plaintiffs are not suing the hospital for its actions as a tax collector, but for completely separate actions and omissions [breach of settlement agreement], which they allege resulted in negative tax consequences." *Id.* at 304 (citing *Davidson*, 2013 U.S. Dist. LEXIS 103185, at *14).

From the beginning (his pre-suit notice), Mr. O'Dell asserted claims expressly seeking "reimbursements" for job expenses, not for a tax refund. The tax issue only arose because Respondents failed to fully pay Mr. O'Dell those reimbursements in response to his Florida pre-suit notices, then claimed a "tax issue." If PJ Cheese's

14

method of creating preemption over FLSA and Florida claims by paying part of the recovery to tax agencies were actually permitted, a new defense ("new barrier") to enforcing FLSA, Florida Constitution, FMWA rights and other claims would be created that would deny Mr. O'Dell the "make whole" relief to which he is entitled under those laws. *See, e.g., Llorca v. Sheriff, Collier Cnty.*, 893 F.3d 1319, 1328 (11th Cir. 2018); Fla. Const. Art. X § 24(f)); *see also, e.g., EEOC v. Cnty. of Erie*, 751 F.2d 79, 82 (2d Cir. 1984) (the "goal" of an FLSA suit "is to make whole the victims of the unlawful underpayment of wages").

## F.    There Was A Clear Contractual Basis For Mass Arbitration

In this case, PJ Cheese required Mr. O'Dell to sign an arbitration agreement requiring arbitration before the AAA. The AAA then determined that the mass arbitration rules apply and appointed two process arbitrators – William Lemons, then Judge Heckman. As courts repeatedly hold, this determination and appointment is well within the AAA's authority. *See, e.g., Abrahamyan v. Citibank N.A.*, 2025 U.S. Dist. LEXIS 90158, at *14-15 (C.D. Cal. May 9, 2025) (citing *MacClelland v. Cellco P'ship.*, 609 F. Supp. 3d 1024, 1044 (N.D. Cal. 2022)). Nonetheless, PJ Cheese refused to comply with rulings by those process arbitrators. PJ Cheese now improperly argues that consecutive decisions by Arbitrator Lemons, the AAA itself, and Judge Heckman that the mass arbitration rules apply were all incorrect *and* should be overturned because none of them "even arguably construed" the DRP.

Again, PJ Cheese demands the Court re-decide the merits of an issue decided

15

in the underlying arbitration, which well exceeds the Eleventh Circuit's narrow scope of review. *Oxford Health Plans*, 569 U.S. at 569; *Gherardi*, 975 F.3d at 1238-39. Applying the actual standard, the evidence shows that the arbitrators considered the parties' agreement in deciding that the AAA's mass arbitration rules apply. *Hidroelectrica Santa Rita, SA*, 119 F.4th at 926; *S. Commun's. Servs.*, 720 F.3d at 1359-60.

As earlier shown, in the November 22, 2024 Order holding that the AAA mass arbitration rules apply, Arbitrator Lemons quoted the pertinent agreement term:

> The agency will administer any arbitration under the AAA's "Employment Arbitration Rules and Mediation Procedures" and in conformity with this Dispute Resolution Program. . . . The rules in effect on the date a demand is made shall control.

Ex. 11 at 1. Next, Arbitrator Lemons reasoned that the AAA mass arbitration rules were "placed in play" by the parties' agreement as they expressly required arbitration pursuant to the AAA Employment Arbitration Rules. *Id.* at 1-2.[3] That conclusion is consistent with AAA Mass Arbitration Supplementary Rule MA-1(a) that provides that "[t]hese Supplementary Rules supplement any other AAA-ICDR Rules applicable to the disputes." *Id.* Arbitrator Lemons also explained that the arbitration agreement must be modified to avoid the mass arbitration rules. *Id.* at 2 n.2.

Arbitrator Lemons further recognized that the parties' arbitration agreement

---

[3] PJ Cheese admits that Arbitrator Lemons interpreted the parties' agreement as PJ Cheese informs the Court that "Lemons reasoned that the Mass Arbitration Supplementary Rules were automatically 'placed in play' by the AAA Employment Arbitration Rules incorporated into the parties' agreement." ECF 26 at 5. However, PJ Cheese proceeds to criticize Arbitrator Lemons' reasoning, which falls outside of the scope of permissible review at this stage. *Stolt-Nielsen*, 559 U.S. at 671-72; *Gherardi*, 975 F.3d at 1238.

provided him, as an arbitrator, the exclusive authority to interpret the arbitration agreement and that agreement expressly prohibited any court from such interpretations. *Id.* n.1 (referencing Ex. 4 at 6 ("Unless this provision would result in the Program being held unenforceable under prevailing law, the arbitrators, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, arbitrability, applicability, enforceability or formation of the agreement to arbitrate including, but not limited to, any claim that all or any part of the agreement to arbitrate is void and voidable.")). Thus, at the very minimum, Arbitrator Lemons arguably interpreted the parties' arbitration agreement. *Hidroelectrica Santa Rita*, 119 F.4th at 926; *S. Commun's. Servs.,* 720 F.3d at 1359-60.

Judge Heckman built on Arbitrator Lemons' November 22, 2024 ruling that the AAA mass arbitration rules apply pursuant to the DRP. In the June 20, 2025 Order, she held that those rules provide that "the process arbitrator shall have the authority to determine ... [d]isputes regarding payment of administrative fees, arbitrator compensation and expenses." Ex. 14 at 9.  PJ Cheese demand for critical review of the merits of the arbitrators' decisions should be rejected as beyond the Eleventh Circuit's scope of allowed review. *Stolt-Nielsen,* 559 U.S. at 671-72; *Gherardi,*  975 F.3d at 1238.

**G.    The Arbitration Agreement Does Not Bar The AAA's Mass Arbitration Process**

Even if correctness of arbitrators' decisions regarding the AAA mass arbitration rules were at issue, the DRP prohibits class and collective action claims, not the AAA's mass arbitration process. Specifically, the DRP provides that "there shall be no class

or collective action arising from any employee's claim(s) and each employee may only maintain a claim under this plan on an individual basis and may not participate in a class or collective action." Ex. 4 at 4.

PJ Cheese ignores the fundamental differences between "class and collective actions" prohibited by the DRP, on the one hand, and AAA's mass arbitration process, on the other hand. The purpose of the AAA's mass arbitration process is to provide parties "an efficient and economical path toward the resolution of multiple *individual disputes*," not to combine claims for one final decision on the ultimate merits. AAA Mass Arbitration Supplementary Rules at 1 ("Introduction"). Those mass arbitration rules repeatedly emphasize that each employee's claim remains an "*individual case*" or "*individual dispute*." *Id.* at 1 ("Each case will still be heard and decided individually by the arbitrator."); 7, (Rule MA-6(i) ("Unless the parties otherwise agree, the Process Arbitrator's service will conclude as to an *individual case* upon the appointment of a Merits Arbitrator to that case, the closure of the *individual case*, or ..." (emphasis added)); 8 Rule MA-7(c) ("...if the number of individual cases exceeds the number of qualified arbitrators in the locale ... the AAA-ICDR may assign multiple cases to a single Merits Arbitrator, *who will decide each case on its own merits*." (emphasis added)).

In sharp contrast to AAA's mass arbitration process, which provides for individual determination of each employee's claim based on its own facts and merit, a class action (prohibited by the DRP) must entail determination of a common contention by each class member "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue

18

that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 338 (2011). Moreover, unlike the AAA's mass arbitration process, "class judgment binds absentees with respect to their individual claims for relief." *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 654-55 (2022).

Also, in sharp contrast to AAA's mass arbitration process, that provides for "individual" determination of each employee's claim, a collective action (also prohibited by the DRP) entails an action by one or more employees against an employer on behalf of others "similarly situated" situated and all such employees who opt-in are "bound" by the court's decision. 29 U.S.C. § 216(b); *Brown v. Steak N Shake, Inc.*, 2023 U.S. Dist. LEXIS 248826, at *9-10 (N.D. Ga. May 17, 2023).

PJ Cheese simply ignores case law analyzing the AAA's mass arbitration rules, which hold that arbitrators have authority to apply the AAA's mass arbitration rules. *See, e.g.*, *Abrahamyan,* 2025 U.S. Dist. LEXIS 90158, at *15. Instead, PJ seeks to rely on cases such as *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 509 (2018). Its reliance is totally misplaced as that decision merely holds that class action waivers are valid. Mr. O'Dell never sought a class action, a collective action, or any other decision on the merits impacting other employees. He only agreed to coordination of numerous *individual claims* through AAA mass arbitration process. Each claim is decided on an individual basis, as Mr. O'Dell experienced. Ex. 1.

Respondents argue that the AAA's mass arbitration process "fundamentally 'changes the nature of arbitration.'" Whether that broad characterization is true or not (it is not), such consideration falls well outside of the sole question for the Court: did

the arbitrator even arguably consider the parties' agreement? *Stolt-Nielsen S.A.,* 559 U.S. at 671-72; *Gherardi,* 975 F.3d at 1238.

Moreover, some of the statements used to support PJ Cheese's "fundamental change" argument are demonstrably false. For example, PJ Cheese argues that the parties do not participate in selecting process arbitrators. ECF 26 at 24. The attached AAA correspondence shows otherwise. *Compare* Exs. 36-10.

As another example, PJ Cheese states that "the Mass Arbitration Supplementary Rules require the parties to 'initiate a global mediation of the Mass Arbitration[.]'" ECF 26 at 25 (citing Rule MA-9). PJ Cheese ignores that the same Rule MA-9 states that "[a]ny party may unilaterally opt out of mediation upon written notification to the AAA-ICDR and the other parties to the arbitration." *Id.*

PJ Cheese complains about the amount of fees recovered for efforts before the process arbitrators and blames the mass arbitration process for delays. Those issues fall well outside the Eleventh Circuit's exceedingly narrow scope of review. *Stolt-Nielsen,* 559 U.S. at 671-72; *Gherardi,* 975 F.3d at 1238.

## IV.    CONCLUSION

For all reasons stated, the Court should enter judgment for Mr. O'Dell, confirm the Final Award including the June 20, 2025 and November 17, 2025 Orders, hold that PJ Cheese must pay $3,063.47 for reimbursements, $7,240.80 for liquidated damages, $241,723.00 for fees, $1,425.00 for reimbursement of PJ Cheese's arbitration fees, $481.00 for arbitration costs; and $161,825.00 for arbitration fees. The Court should also grant leave to file a motion for fees and costs.

Respectfully submitted this 8th day of June 2026.

ARCADIER, BIGGIE, AND WOOD, PLLC.
*/s/ Joseph C. Wood, Esquire*
Joseph C. Wood, Esquire

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the original of the foregoing was filed with the Clerk of Court by using the CM/ECF system on this 8th day of June 2026.

ARCADIER, BIGGIE, AND WOOD, PLLC.

*/s/ Joseph C. Wood, Esquire*
Joseph C. Wood, Esquire
Florida Bar No.: 0093839
2815 W. New Haven, Suite 304
Melbourne, Florida 32904
Primary Email: office@ABWlegal.com
Secondary Email: wood@ABWlegal.com
Phone: (321) 953-5998
Fax: (321) 953-6075

*Counsel for Petitioner John O'Dell*

21