# EXHIBIT 35

**BEFORE THE AMERICAN ARBITRATION ASSOCIATION**

| | | |
|---|---|---|
| JOHN O'DELL, | ) | |
| | ) | |
| Claimant, | ) | AAA Case No. 01-24-0005-9915 |
| | ) | |
| v. | ) | Arbitrator:  Hon. Melvia Green (Ret.) |
| | ) | |
| PJ CHEESE, INC., | ) | |
| | ) | |
| Respondent. | ) | |

**CLAIMANT'S BRIEF REGARDING DEFENDANTS' TAXATION OF
DAMAGES PAID TO CLAIMANT AND ASSOCIATED LIQUIDATED DAMAGES**

### I.      INTRODUCTION

On July 29, 2024, Claimant John O'Dell sent Respondent PJ Cheese, Inc. ("PJ Cheese") an amended Florida pre-suit notice letter pursuant to Fla. Stat. § 448.110. Therein, he identified his minimum wage claim based on under-reimbursed vehicle costs (nominal wages – unreimbursed vehicle costs incurred in performing his job = subminimum net wages). Mr. O'Dell demanded $9,817.50 "as reimbursements for vehicle costs." Ex. 1 at 2. Respondent produced Mr. O'Dell's work time, pay, mileage and reimbursement data.  Claimant's counsel used that data to recalculate Mr. O'Dell's damages, then sent PJ Cheese amended and second amended Florida pre-suit notices, ultimately demanding $7,267.68.  Ex. 2; Ex. 3 at 2.

In the exact same claim against PJ Cheese, you, as the Arbitrator, previously held that "[a]s a matter of law, employees' minimum wages are restored through awards of reimbursements in minimum wage claim disputes based upon unreimbursed job costs." *Sarwi v. PJ Cheese, Inc.*, AAA Case No. 01-22-0002-1162 (Green Mar. 6, 2022) (Ex. 4) at 3. Your Honor further held that such reimbursements are not taxable. *Id.* at 4.

PJ Cheese has disregarded Your Honor's March 6, 2022 order and award in *Sarwi* by continued to pay recovery in minimum wage claims resulting from under-reimbursed vehicle costs

1

as wages (actually "bonuses"), and deducting income and payroll taxes from such payments as if they are wage payments. In this case, PJ Cheese paid Mr. O'Dell at $7,267.78 bonus on or about August 6, 2024, and deducted a total of $3,063.47 for "Federal Tax," "FICA Social Security Tax," and "FICA Medicare Tax" from that payment. Ex. 5. That left Mr. O'Dell only $4,204.31 of the $7,267.78 amount of unreimbursed expenses he demanded ($7,267.78 ""Bonus" paid - $3,063.47 income and payroll tax deductions = $4,204.31 net "Bonus" payment to Mr. O'Dell).

Mr. O'Dell seeks payment of the remaining reimbursements due, totaling $3,063.47.[1] The request that reimbursements not be taxed is consistent with Your Honor's prior decision in *Sarwi,* the IRS guidance, and how all, or virtually all, other pizza companies operate when paying settlements or judgments in under-reimbursement cases. It is also consistent with how PJ Cheese and all or virtually all other pizza companies operate outside of litigation; these companies do not withhold taxes from reimbursements.

## II.     STATEMENT OF PERTINENT FACTS

1.      On July 29, 2024, Mr. O'Dell, through his counsel, sent a Florida pre-suit notice letter to PJ Cheese's attorney, William Hancock, pursuant to Fla. Stat. § 448.110(6)(a). Ex. 1.

2.      In that Florida pre-suit letter, Mr. O'Dell identified his minimum wage claim based on under-reimbursed vehicle costs (nominal wages – unreimbursed vehicle costs incurred in performing his job = subminimum net wages). *Id.* at 1-2.

3.      Based on his estimates prior to receipt of PJ Cheese's data, Mr. O'Dell demanded that PJ Cheese pay him $9,817.50.  Ex. 1.

4.      On or about July 31, 2024, PJ Cheese disclosed Mr. O'Dell's pay records and a spreadsheet reflecting Mr. O'Dell's work time, pay, mileage and reimbursement data. Ex. 6 ¶ 2.

---

[1] Liquidated damages, attorney's fees and costs will be addressed later.

5.      Mr. O'Dell's counsel used that data to recalculate Mr. O'Dell's damages. *Id.*

6.      Later on July 31, 2024, Mr. O'Dell's counsel sent Mr. Hancock two amended Florida pre-suit notice pursuant to Fla. Stat. § 448.110(6)(a), ultimately demanding $7,267.78. Ex. 2; Ex. 3 at 1-2.

7.      On or about August 27, 2024, PJ Cheese paid Mr. O'Dell a purported $7,267.78 "Bonus" (wages) less $3,063.47 deducted from that payment for "Federal Tax," "FICA Social Security Tax," and "FICA Medicare Tax," leaving Mr. O'Dell a net payment of $4,204.31 Ex. 5.

8.      Mr. O'Dell's counsel attempted to resolve this dispute through negotiation and citing authority to PJ Cheese. PJ Cheese has been unable to provide any legal authority justifying its tax withholdings. Nonetheless, PJ Cheese has failed and refused to pay Mr. O'Dell the remaining $3,063.47 demanded in his July 31, 2024 amended Florida pre-suit notice. Ex. 6 ¶ 3.

### III.    ARGUMENT

**A.    All Relevant Authority Shows That The Recovery Is Reimbursements, Not Taxes , As Your Honor Previously Held**

Courts consistently hold that taxes should not be withheld from reimbursements for job-related expenses recovered by workers. That includes controlling authority issued by the Eleventh Circuit in *Arriaga v. Fla. Pac. Farms, L.L.C.*, 305 F.3d 1228 (11th Cir. 2002). The Eleventh Circuit expressly recognizes that the FLSA provides workers the right to "reimbursement:" "If an expense is determined to be primarily for the benefit of the employer, *the employer **must reimburse** the employee* during the workweek in which the expense arose." 305 F.3d at 1237 (emphasis added) (citing 29 C.F.R. § 531.35). The Eleventh Circuit further recognizes that "[c]ompliance with the FLSA is measured by the workweek. See [29 C.F.R.] § 776.4. ***Workers must be reimbursed*** during the first workweek for pre-employment expenses which primarily benefit the employer, to the point that wages are at least equivalent to the minimum wage." *Id.* (also stating that "the Growers

3

must *reimburse* the Farmworkers up to the point that their wages satisfy the FLSA minimum wage.") (emphasis added).

Indeed, Your Honor, as Arbitrator, previously decided this issue before against PJ Cheese itself, yet PJ Cheese stubbornly continues to deduct from numerous claimants' recovery in the same claim, even at the risk of far greater arbitrator's fees, AAA's fees, attorney's fees, and costs. But, PJ Cheese's main defense strategy is fighting the same battles over and over, even after losing those battles every time.[2]

On March 6, 2023, Your Honor held in *Sarwi* that, "[a]s a matter of law, employees' minimum wages are restored through awards of reimbursements in minimum wage claim disputes

---

[2] PJ Cheese, Inc., PJ Louisiana, Inc., PJ Utah, LLC and Ohio Pizza Delivery Co. are commonly-owned, operated and represented companies. Ex. 7. As one example of those companies continuing to litigate issues they have repeatedly lost, PJ Cheese recently lost the issue of whether delivery drivers must prove their "actual" vehicle costs to prevail, as opposed to *estimating* vehicle costs. PJ Cheese has now lost that same issue **all 14 times** that it has litigated and arbitrated it. *Allen v. PJ Cheese, Inc.*, 2024 U.S. Dist. LEXIS 101764, at *24-27 (N.D. Ala. June 7, 2024); *Sullivan v. PJ United, Inc.,* 362 F. Supp. 3d 1139, 1155 (N.D. Ala. Jul. 19, 2018) (reinforcing court's earlier finding that "*Sullivan could reasonably approximate expenses incurred on behalf of any employer*."); *Sullivan v. PJ United, Inc.,* 2017 U.S. Dist. LEXIS 223270, at *15-23 (N.D. Ala. Oct. 16, 2017); *Lindsey v. PJ Cheese, Inc.*, Case No. 01-24-0005-9817 (Rosenthal Sept. 15, 2025) (Ex. 8) at 1-7; *Sample v. PJ Cheese, Inc.*, Case No. 01-22-0004-8890 (Walther Nov. 21, 2023) (Ex. 9) at 2; *Pack v. PJ Cheese, Inc.*, AAA Case No. 01-23-0000-6495 (Horn Nov. 8, 2023) (Ex. 10) at 2; *Sarwi v. PJ Cheese, Inc.*, AAA Case No. 01-22-0002-1162 (Green Dec. 27, 2022) (Ex. 11) at 2; *Wallenberg v. PJ Utah, LLC,* AAA Case No. 01-21-0004-6899 (Williams July 4, 2022) (Ex. 12) at 2; *Ridenour v. Ohio Pizza Delivery Co.*, AAA Case No. 01-21-0004-7137 (June 21, 2022) (Ex. 13) at 2; *Benoit v. PJ Louisiana, Inc.*, AAA Case No. 01-21-0004-8139 (Duval Apr. 22, 2022) (Ex. 14) at 3; *Rice Sr. v. PJ Cheee, Inc.,* AAA Case No. 1-22-0001-8878 (Rosenthal Nov. 30, 2022) (Ex. 15) at 1-2; *Rice Jr. v. PJ Cheese, Inc.*, AAA Case No. 01-20-0014-8150 (Bennett Nov. 12, 2021) (Ex. 16), at 3-4 (same); *Nelson v. PJ Cheese, Inc.*, AAA Case No. 01-19-0001-5314 (Kimmell Feb. 3, 2020) (Ex. 17), at 2-4; *Ashton v. PJ Louisiana, Inc.*, AAA Case No. 01-17-0006-8180 (Pilie Nov. 28, 2018) (Ex. 18), at 3-8. But, PJ Cheese continues to stubbornly spent considerable time, effort, and resources fighting the same issue as if none of the prior 15 consistent rulings exist. *Id.*

 PJ Cheese's other main defense strategy is to argue issues that are not before the court or arbitrator, hoping that the court or arbitrator adopt those arguments without the benefit of full briefing.

based upon unreimbursed job costs." Ex. 5 at 3.

Your Honor began the analysis in *Sarwi* by framing the issue as "whether the actual damages to be awarded to the Claimant in this minimum wage claim dispute are reimbursement for job expenses as argued by Claimant or as unpaid wages as contended by Respondent PJ Cheese, Inc." *Id.* at 1.

Next, Your Honor summarized the parties' respective positions: "In the instant minimum wage claim dispute, Claimant Sarwi asserts that his actual damages herein should be awarded as reimbursement for job expenses. Respondent PJC [PJ Cheese], however, argues that the Claimant's actual damages should be awarded as unpaid wages." *Id.*

Your Honor recognized that "[t]he practical distinction between the two is that unpaid wage awards are taxable income but reimbursement for job expenses is not." *Id.* at 3 (citing *Price v. Commissioner,* T.C. Memo 1999-142 (holding reimbursement by employer for expenses incurred by employee on behalf of employer are not income) (citing *Gray v. Commissioner,* 10 T.C. 590, 596-597 (1948))."

Following numerous precedents, including the controlling Eleventh Circuit decision in *Arriaga*, Your Honor concluded that "[a]s a matter of law, employees' minimum wages are restored through awards of reimbursements in minimum wage claim disputes based upon unreimbursed job costs." *Id.* at 3-4 (following *Arriaga,* 305 F. 3d 1228; *Ullom v. Bill Perry & Assocs.,* 2021 U.S. Dist. LEXIS 99610, at *11-12 (M.D. Fla. May 26, 2021) (awarding the plaintiff "mileage owed to remedy kickback from overtime"); *see also Fata v. Pizza Hut of Am., Inc.,* 2016 U.S. Dist. LEXIS 153545, *20 (M.D. Fla. Aug. 5, 2016) (where court approved a settlement agreement of FLSA and FMWA claims by pizza drivers alleging minimum wage violations resulting from under-reimbursed vehicle costs which contained an express provision that recovery

5

of 'reimbursement' for job expenses will be nontaxable.").

Further, Your Honor cited numerous additional cases showing that "[b]oth courts and arbitrators in other jurisdictions have similarly awarded reimbursements for job expenses when minimum wage violations resulted from the failure to reimburse those job costs." *Id.* at 3-4 & n. 2 (citing *Marine v. Viejo Quisqueya Rest. Corp.,* 2022 U.S. Dist. LEXIS 162555, at * 22 (E .D.N.Y. Sept. 8, 2022) (ordering that "plaintiff be awarded $700 in damages for the cost of purchasing and maintaining his bicycle"); *id.at* *30 (awarding "$700 in tools of the trade reimbursement"); *Calle v. Pizza Palace Cafe LLC,* 2022 U.S. Dis. LEXIS 1708, at * 29-30 (E.D.N.Y. Jan. 4, 2022) ("plaintiff should be awarded $308 as reimbursement for his 'tool of the trade' expenses against defendants"); *Lin v. New Fresco Tortillas, Inc.,* 2019 U.S. Dist. LEXIS 74505, at * 11-12 (E .D.N.Y. May 1, 2019) (awarding plaintiff $15,999.82 "as reimbursement of motorcycle costs."), report and recommendation adopted at 2019 U.S. Dist. LEXIS 95197 (E .D.N.Y. May 28, 2019); *Wallenberg v. PJ Utah, LLC,* AAA Case No. 01-21-0004-6899 (Williams Oct. 20, 2020) at 5 (awarding pizza delivery driver "unreimbursed actual vehicle costs."); *Benoit v. PJ Louisiana, Inc.,* AAA Case No. 01-21-0004-8139 (Duval Dec. 13, 2022), at 8 (awarding damages for "unreimbursed vehicle costs" and "unreimbursed return drives").

The fact that so many courts and arbitrators have consistently awarded reimbursements, as opposed to wages, in the same claim strongly supports the conclusion that reimbursements may be awarded in claims alleging minimum wage damages resulting from under-reimbursed vehicle costs, like Mr. O'Dell's claim.

Your Honor recognized in *Sarwi* that PJ Cheese "has cited no law to the contrary," meaning that PJ Cheese has cited no case holding that the damages must be paid as "wages." Ex. 4 at 4. Your Honor also rejected PJ Cheese's arguments about the nature of relief available under the

FLSA and Florida statutes, the claimant being free to pursue the withheld tax payments from government taxing agencies, and non-arbitrability of the disputed payment. *Compare* Ex. 4 *with* Ex. 19 (PJ Cheese's brief in *Sarwi*).[3]

According, Your Honor concluded in *Sarwi* that "the actual damages to be awarded to the Claimant Sarwi herein are for unreimbursed job expenses." *Id.*

Since Your Honor's award in *Sarwi*, courts have likewise continued to award reimbursements in claims alleging minimum wage violations resulting from under-reimbursed job expenses. Further, those recent awards have separated out (a) awards of reimbursements from (b) wages awarded on other claims. *See, e.g., Rahman v. Red Chili Indian Café, Inc.*, 2024 U.S. Dist. LEXIS 214360, at *27-28 & *35-36 (S.D.N.Y. Nov. 22, 2024) (awarding $1,130.00 for "'tools-of-the-trade' damages" to delivery worker for bicycle purchase and repair separately, and in addition to, awarding him "$17,354.25 in unpaid minimum and overtime wages" in other claims); *Perez v. W. Side Pizza, LLC*, 2024 U.S. Dist. LEXIS 62588, at *17-18 (S.D.N.Y. Apr. 4, 2024) (awarding two plaintiffs a total of $1,560.00 for "tools of the trade damages" for purchase of bicycles, a helmet, chain, lock, and bicycle repairs separately, and in addition to, awarding them $98,838.25 total "wage damages" in other claims); *Reyes v. Coppola's Tuscan Grill, LLC*, 2023 U.S. Dist. LEXIS 103745, at *32-33 (S.D.N.Y. June 13, 2023), adopted at 2023 U.S. Dist. LEXIS 113332 (S.D.N.Y. June 30, 2023) (awarding "$5,195.00 in damages for failure to reimburse Plaintiff for three electric bicycles and a helmet" in addition to, and separately from, awarding him "$112,150.50 in back pay and spread-of-hours damages" in other claims).

---

[3] In a recent arbitration scheduling conference, Will Hancock, attorney for PJ Cheese, argued that the arbitrator should not follow Your Honor's ruling in *Sarwi* because he did not fully brief the issue of the nature of relief in *Sarwi*. Ex. 2 ¶ 4. Mr. Hancock's brief shows that he presented his arguments in that case. Ex. 6. Further, he has not identified anything preventing him from asserting additional arguments in *Sarwi.* Ex. 2 ¶ 4.

B.      **PJ Cheese Cannot Double Tax Claimants**

It makes no sense to award additional wages in minimum wage claims based on under-reimbursed job costs because that will result in double taxation of workers, and thereby deny them full recovery. As part of its ongoing payroll process, PJ Cheese already deducted payroll and income taxes from the same wages offset by unreimbursed vehicle costs. Ex. 5. Effectively, delivery drivers, including Mr. O'Dell, already paid the tax on *net* wages they did not receive due to offsets from unreimbursed vehicle costs. Deducting taxes from recovery at this point would effectively subject claimants to double taxation: (1) taxation on the *net* wages not received plus (2) taxation on the recovery.

PJ Cheese's insistence upon double taxation contradicts the FLSA's recognized purpose of providing "make whole" relief. *See, e.g., EEOC v. Cnty. of Erie*, 751 F.2d 79, 82 (2d Cir. 1984) (recognizing that "the goal of a suit under the FLSA … is to make whole the victims of the unlawful underpayment of wages"); *Batts v. Mid South Waffles, Inc.* 2014 U.S. Dist. LEXIS 133328, at *7 (N.D. Ala. Sept. 23, 2014) (recognizing that "the goal of the FLSA" is "to ensure that employees are made whole"); *Kaiser v. At the Beach, Inc.*, 2011 U.S. Dist. LEXIS 149857, at *60-61 (N.D. Okla. Dec. 28, 2011) ("The Court's aim in awarding compensatory damages under the FLSA is to make Plaintiffs whole"); *York v. Wichita Falls*, 763 F. Supp. 876, 886 (N.D. Tex. Aug. 20, 1990) (observing that defendant "is forced by the remedial nature of the FLSA to put them in the same position they would have occupied had these wrongs not occurred"); *Parker v. Burnley*, 703 F. Supp. 925, 927 (N.D. Ga. 1988) ("The purpose of the damage provisions of the FLSA … is to make whole an employee whose rights have been violated").

Fla. Const. Art. X § 24 and Fla. Stat. § 448.110 are interpreted consistently with the FLSA. *Llorca v. Sheriff, Collier Cty.*, 893 F.3d 1319, 1328 (11th Cir. 2018) (citing Fla. Const. Art. X §

9

24(f) ("It is intended that case law, administrative interpretations, and other guiding standards developed under the federal FLSA shall guide the construction of this amendment and any implementing statutes or regulations."); Fla. Stat. § 448.110(3).  Thus, the Florida laws likewise require make-whole relief. *Id.*

Notably, the tax withholdings that PJ Cheese insists upon do not save PJ Cheese any money. PJ Cheese simply pays the same amount to taxing agencies that it would pay to claimants *plus* PJ Cheese's own share of payroll taxes (unnecessarily doubling its own prior tax payments). Moreover, PJ Cheese's tax withholdings disproportionately increase fees by causing additional disputes, such as this briefing. There is no reason that PJ Cheese cannot be like every other pizza company in properly paying reimbursement awards without making improper tax deductions.

**C.    RESPONSES TO PJ CHEESE'S LIKELY ARGUMENTS**

**1.    PJ Cheese's Likely Argument That Florida Law Limits Damages to "Wages" Only Ignores The Actual Statutory Language.**

PJ Cheese typically argues that the FLSA, Florida Constitution and FMWL limit actual damage recovery to an award of "wages" only. Because the damages at issue were paid under Florida law, Florida law applies to this question.

Ignoring for the moment the Eleventh Circuit's controlling decision in *Arriaga*, 305 F.3d at 1237, Your Honor's decision on the same issue in *Sarwi* (Ex. 4) at 3-4, and legions of awards of "reimbursements" under the FLSA and Florida law (including many cited above by Claimant), the plain language of Fla. Const. Art. X § 24 and Fla. Stat. § 448.110 provides that courts may grant a broad range of legal and equitable remedies to compensate employees for violations, and does not limit actual damage awards to only "wages."

Both the Florida Constitution and FMWL expressly *require* courts to award any "legal or equitable relief as may be appropriate to remedy the violation," except that punitive damages

cannot be awarded as part of such "legal or equitable relief."[4] Fla. Const. Art. X § 24(e) expressly provides that prevailing claimants "*shall* be *entitled* to *such legal or equitable relief* as may be appropriate to remedy the violation including, without limitation, reinstatement in employment and/or injunctive relief." *Id.* (emphasis added). Fla. Stat. § 448.110(6)(c)(2) likewise provides that "[u]pon prevailing in an action brought pursuant to this section, aggrieved persons *shall* also be *entitled* to such *legal or equitable relief* as may be appropriate to remedy the violation, including, without limitation, reinstatement in employment and injunctive relief." Fla. Stat. 448.110(b)(c)(2) (emphasis added). Thus, whether reimbursement is considered "legal relief" or "equitable relief" is inconsequential because both the Florida Constitution and FMWL require courts to provide that relief as it is necessary to provide complete relief to delivery drivers.[5]

That result is not limited to Florida law. Even assuming *arguendo* that PJ Cheese made the payment at issue (with tax withholdings) to resolve an FLSA claim (it did not), the Eleventh Circuit expressly recognizes that the FLSA provides workers the right to "reimbursement:" "If an expense is determined to be primarily for the benefit of the employer, *the employer **must reimburse** the employee* during the workweek in which the expense arose." *Arriaga*, 305 F.3d at 1237 (emphasis added) (citing 29 C.F.R. § 531.35). The Eleventh Circuit further recognizes that "[c]ompliance with the FLSA is measured by the workweek. See [29 C.F.R.] § 776.4. ***Workers must be reimbursed*** during the first workweek for pre-employment expenses which primarily benefit the employer, to the point that wages are at least equivalent to the minimum wage." *Id.* (also stating that "the Growers must *reimburse* the Farmworkers up to the point that their wages satisfy the

---

[4] The punitive damage issue is not relevant here.
[5] *See, e.g., D.R. v. Redondo Beach Unified Sch. Dist.*, 56 F.4th 636, 647 (9th Cir. 2022) (recognizing that "reimbursement" for education costs paid for by plaintiff is a form of equitable relief); *Doe v. Portland Pub. Sch.*, 30 F.4th 85, 92 (1st Cir. 2022) (same).

FLSA minimum wage.") (emphasis added).

### 2. PJ Cheese Has Been Unable To Present Any Case Finding That Remedies Are Limited To "Wage" Payments

In contrast to Claimant's above citations of numerous cases finding that reimbursement is a proper form of relief in a minimum wage claim based on under-reimbursed job expenses,[6] PJ Cheese has shown that it cannot present any contrary authority.

Instead, PJ Cheese attempts to rely on cases containing the unremarkable holding that "wages" awarded in FLSA and state wage claims are subject to taxes and withholdings. Claimant does not dispute that either (1) "wages" awarded in all types of claims may be taxable or (2) employers may withhold from "wage" payments recovered by settlement or judgment. The relevant issue is whether minimum wages are restored by paying reimbursements in minimum wage claims resulting from under-reimbursed job expenses. All of the applicable authorities cited show that wage rates are restored in such claims by awarding reimbursements, including Your Honor's decision in *Sarwi*.

### 3. PJ Cheese's Typical Attempt To Change The Eleventh Circuit's Ruling In *Arriaga* Is Without Merit

Instead of citing any actual authority holding that courts or arbitrators may not award reimbursements, PJ Cheese tries to convince arbitrators that the Eleventh Circuit actually meant "pay additional wages" when it ***repeatedly*** used the specific terms "reimburse" and "reimbursements" in *Arriaga,* the controlling decision. The Eleventh Circuit clearly meant

---

[6] *Arriaga,* 305 F. 3d at 1235-1238; *Ullom,* 2021 U.S. Dist. LEXIS 99610, at *11-12; *Fata v. Pizza Hut of Am., Inc.,* 2016 U.S. Dist. LEXIS 153545, at *20; *Rahman,* 2024 U.S. Dist. LEXIS 214360, at *27-28 & *35-36; *Perez,* 2024 U.S. Dist. LEXIS 62588, at *17-18; *Reyes*, 2023 U.S. Dist. LEXIS 103745, at *32-33, adopted at 2023 U.S. Dist. LEXIS 113332; *Marine,* 2022 U.S. Dist. LEXIS 162555, at * 22; *Calle,* 2022 U.S. Dis. LEXIS 1708, at * 29-30; *Lin,* 2019 U.S. Dist. LEXIS 74505, at * 11-12, report and recommendation adopted at 2019 U.S. Dist. LEXIS 95197; *Wallenberg* (Ex. 13) at 5; *Benoit* (Ex. 14) at 8; *Sarwi* (Ex. 5) at 3-4.

"reimburse" when it repeatedly used the term "reimburse." The following examples illustrate the

nonsensical nature of PJ Cheese argument:

Example 1:  PJ Cheese argues for correcting the Eleventh Circuit's holding that "[i]f an expense is determined to be primarily for the benefit of the employer, *the employer **must reimburse the employee*** during the workweek in which the expense arose" (305 F.3d at 1237 (emphasis added)) to "[i]f an expense is determined to be primarily for the benefit of the employer, *the employer **must pay additional wages to the employee equal to the amount of the expenditure*** during the workweek in which the expense arose,"

Example 2:  PJ Cheese argues for correcting the Eleventh Circuit's holding that "[c]ompliance with the FLSA is measured by the workweek. See [29 C.F.R.] § 776.4. *Workers must be reimbursed* during the first workweek for pre-employment expenses which primarily benefit the employer, to the point that wages are at least equivalent to the minimum wage" 305 F.3d at 1237 (emphasis added)) to "[c]ompliance with the FLSA is measured by the workweek. See [29 C.F.R.] § 776.4. *Workers must be paid additional wages* during the first workweek for pre-employment expenses which primarily benefit the employer, to the point that the wages are at least equivalent to the minimum wage"

Example 3:  PJ Cheese argues for correcting the Eleventh Circuit's holding that "the Growers *must reimburse* the Farmworkers up to the point that their wages satisfy the FLSA minimum wage" 305 F.3d at 1237 (emphasis added)) to "the Growers must *pay additional wages* to the Farmworkers up to the point that their wages satisfy the FLSA minimum wage."

Example 4:  PJ Cheese argues for correcting the Eleventh Circuit's holding that "[i]f the transportation charge falls into this category, it does not constitute 'other facilities' and may not be counted as wages; the employer therefore would be *required to reimburse the expense* up to the point the FLSA minimum wage provisions have been met" (*id.* at 1241-42 (emphasis added)) to "[i]f the transportation charge falls into this category, it does not constitute 'other facilities' and may not be counted as wages; the employer therefore would be *required to pay additional wages* up to the point the FLSA minimum wage provisions have been met."

Example 5:  PJ Cheese argues for correcting the Eleventh Circuit's holding that "[c]osts such as dry-cleaning, ironing, or other special treatment *must be reimbursed by the employer* when such expenses reduce wages below the minimum wage, and such uniform maintenance is required by the nature of the work" (*id.* at 1244 (emphasis added)) to "[c]osts such as dry-cleaning, ironing, or other special treatment must be *matched by additional wages paid by the employer* when such expenses reduce wages below the minimum wage, and such uniform maintenance is required by the nature of the work."

13

Example 6:    PJ Cheese argues for correcting the Eleventh Circuit's holding regarding Visa costs that "[a]lthough immediate reimbursement is not necessary, payment may be required within the first week if the employees' wages, once the costs are subtracted, are below minimum wage. If so, *the employer must provide reimbursement* up to the point where the minimum wage is met" (*id.* (emphasis added)) to "[a]lthough immediate reimbursement is not necessary, payment may be required within the first week if the employees' wages, once the costs are subtracted, are below minimum wage. If so, the employer *must pay additional wages* up to the point where the minimum wage is met."

Of course, substituting a key word repeatedly used by a court may change the meaning of any court's decision (other than possibly substitution of a synonym). However, it is absurd to suggest that litigants may change controlling precedent by interlineation of their desired terminology. Courts reject similar, but rare, attempts to claim that a court meant something other than it stated. *See, e.g. Shir Law Grp., P.A. v. Carnevale*, 317 So. 3d 211, 212 (Fla. DCA 3d Cir. 2021) (rejecting request to interpret a court-ordered trust as an injunction, explaining that "[c]ourts are presumed to say what they mean whether orally or in writing"); *see also, e.g., In re R.H.*, 2023 Kan. App. Unpub. LEXIS 343, at *27-28 (Kan. App. Aug. 18, 2023) (Atcheson, concurring) (summarizing the general rule that courts "may (and should) assume district courts say what they mean and mean what they say in their written decisions. The words presumably are chosen and assembled with some care and deliberation to express with clarity and vigor the ideas the district court intends to convey.").

### 4.    PJ Cheese's Argument Not Only Ignores The Law, But It Further Ignores Common Sense And Practical Realities.

PJ Cheese typically attempts to convince arbitrators that, contrary to the 29 C.F.R. § 531.35 (the "anti-kickback regulation"), an employer cannot comply with the minimum wage compliance unless it *increases wage payments* on weekly basis to include either:

(1) regular wages + (2) *additional wages earned* up to the point that the minimum wage is restored

14

> or

> (1) regular wages + (2) reimbursements deemed appropriate by the employer + (3) additional wages up to the point that the minimum wage is restored.

At least the first of these two possible equations ignores the long-running recognition of non-taxable reimbursements of employee-paid expenses. *See, e.g., Price*, T.C. Memo 1999-142 (reimbursement by employer for expenses incurred by employee is not income) (citing *Gray*, 10 T.C. at 596-597; *Lyeth v. Hoey*, 305 U.S. 188, 196 (1938) (finding that recovery of inheritance through litigation was not taxable income because the funds recovered in litigation assume the same nature as the funds that allegedly should have been paid).

Both of the above equations result in unnecessary taxes that can be easily eliminated by paying funds as "reimbursements" rather than "wages." *Id.*

Moreover, both possible equations set forth above (capsulizing PJ Cheese's argument that additional *wages* must be paid up to the point of employee-paid job expenses) ignore the fact that additional wages needed to match employee-paid job expenses, unlike reimbursements, must be "grossed up" by the amount of taxes to restore the minimum wage. That is especially evident in light of the "make whole" relief required under the FLSA, Fla. Const. Art. X § 24 and Fla. Stat. § 448.110(6)(c)(2); *see also Parker v. Battle Creek Pizza, Inc.*, 95 F.4th 1009, 1016 (6th Cir. 2024) (emphasizing that employers must at pay at least the exact minimum wage, not a reasonable approximation that may come close to restoring the minimum wage).

Additionally, PJ Cheese ignores the fact that paying more wages requires it to increase the overtime rate in any week in which the employee works more than 40 hours, unlike paying reimbursements. *See* 29 U.S.C. § 207(a)(1) (overtime rate is "a rate not less than one and one-half times the regular rate at which he is employed"), 29 U.S.C. § 207(e) (defining "regular rate … to include all remuneration for employment paid to, or on behalf of, the employee"), 29 U.S.C. §

207(e)(2) (exempting from the definition of "regular rate" "reasonable payments for traveling expenses, or other expenses, incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer, and other similar payments to an employee which are not made as compensation for his hours of employment").

Moreover, it is axiomatic that funds recovered in litigation are subject to the same tax treatment as they would have been if paid without litigation. *Lyeth*, 305 U.S. at 196 (recovery of inheritance through litigation was not taxable income because the funds recovered in litigation assume the same nature as the funds that allegedly should have been paid); *see also* IRS Private Letter Ruling ("PLR") 201810004 ("if the recovery is received as the replacement of capital destroyed or injured rather than for lost profits, the money received is a return of capital and not taxable to the extent the payment does not exceed the adjusted basis in the property") (citing *Freeman v. Comm'r.*, 33 T.C. 323, 327 (1959)). The insufficient reimbursements that PJ Cheese paid to Mr. O'Dell *when he was working* were not taxed. PJ Cheese presents no colorable justification why the funds it paid to Mr. O'Dell as a result of legal action should be treated differently.

**5.**     **PJ Cheese's Typical Argument About Avoiding A Windfall Is Without Merit**

PJ Cheese does not dispute the fact that it pays "reimbursements" to its delivery drivers for their vehicle costs in the ordinary course of its business *without withholdings*. That is evident from Mr. O'Dell's paychecks and PJ Cheese's data disclosed in this matter. The amounts of the wages are shown on the pay records, then subject to express deductions, but not the amounts of the reimbursements. *Compare* Ex. 20 (PJ Cheese's "Power Query" showing Mr. O'Dell's work time, pay, recorded milage, and reimbursements) *with* Ex. 21 (PJ Cheese's pay records).

For example, PJ Cheese's "Power Query" shows that it reimbursed Mr. O'Dell a total of

16

$240.05 during the two week pay period ended July 21, 2024, but did not count those reimbursements as income or withhold from them. Ex. 21. Thus, PJ Cheese's own records show that, had Mr. O'Dell received additional reimbursements in the ordinary course of his employment, those reimbursements would not have been subject to withholding. Simply stated, and contrary to PJ Cheese's argument, paying Mr. O'Dell "reimbursements" in response to his legal claim without deduction will restore him to the same position he would be in had PJ Cheese reasonably reimbursed him in the first place. That is "make whole" relief required under the FLSA, Florida Constitution and the FMWL, not a windfall for Mr. O'Dell.

The following scenarios demonstrate that PJ Cheese's withholdings deducted from payment of Mr. O'Dell's claim subjected Mr. O'Dell to a detriment compared to reimbursement at the IRS standard business mileage reimbursement rate ("the IRS rate"). For the two week pay period ended July 21, 2024:

| | Reimbursement In Ordinary Course of Business | Reimbursement Recovered Through Claim | Extra Pay Recovered Through Claim |
|---|---|---|---|
| Miles driven | 547.3 | 547.3 | 547.3 |
| Reimbursement paid | $ 240.05 | $ 240.05 | $ 240.05 |
| Additional reimbursement needed to reach IRS rate | $ 126.64 | $ 126.64 | |
| Extra pay [sic] | | | $ 126.64 |
| Reimbursement at IRS rate | $ 366.69 | $ 366.69 | |
| Reimbursement paid plus extra pay [sic] | | | $ 366.69 |

| | | | |
|---|---|---|---|
| Gross hourly pay (including tip credits)[7] | $ 655.80 | $ 655.80 | $ 782.44 |
| FICA withholdings (7.65% for employee share) | $ (50.17) | $ (50.17) | $ (59.86) |
| Net pay (including tip credits) | $ 605.63 | $ 605.63 | $ 722.58 |
| Net pay (including tip credits) plus reimbursement | $ 732.27 | $ 732.27 | $ 722.58 |
| Income tax (15% overall rate assumed) | $ (98.37) | $ (98.37) | $ (117.37) |
| Net pay plus reimbursements after income taxes | $ 633.90 | $ 633.90 | $ 605.21 |

These calculations show that Mr. O'Dell would receive the exact same net dollar amount whether (a) PJ Cheese reimbursed him at the IRS rate during his employment or (b) PJ Cheese paid his claim through extra reimbursements to reach the IRS rate. That is not a windfall; it is clearly the "make whole" relief required by the FLSA, Fla. Const. Art. X § 24 and Fla. Stat. § 448.110(6)(b)(2). These calculations also show that, just for this two-week pay period ended June 9, 2024, Mr. O'Dell would lose a net $28.69 resulting from PJ Cheese's payment of "extra pay equal to costs incurred" ($633.90 net dollars if recovery is paid as reimbursement - $605.21 if recovery is "extra pay" = $28.69 difference). That is significant to a low-wage earner like Mr. O'Dell. The disparity will be greater if Mr. O'Dell's federal tax rate exceeds 15%. *See Parker*, 95 F.4th at 1016 (employers must at pay at least the exact minimum wage, not a reasonable approximation that may come close to restoring the minimum wage). Stated from a different perspective, no windfall results from paying reimbursements because funds recovered in litigation

---

[7] Tips are not counted here because they are not counted toward minimum wage compliance. Only the amount of a valid tip credit is counted. *See, e.g., Crook v. PJ Ops., LLC*, 2022 U.S. Dist. LEXIS 194027, at *2-5 (E.D. Ky. Oct. 25, 2022) (citing cases); *Rodriguez v. GC Pizza, LLC ("Rodriguez II")*, 2022 U.S. Dist. LEXIS 170920, at *28-30 (D. Neb. Sept. 21, 2022); *Rechtoris v. Dough Mgmt.*, 2019 U.S. Dist. LEXIS 59617, at *5 (N.D. Ind. Apr. 5, 2019) (reviewing cases).

are subject to the same tax treatment as they would have been if paid without litigation. *Lyeth*, 305 U.S. at 196; PLR (citing *Freeman*, 33 T.C. at 327).

**5.** **PJ Cheese Argues For Unnecessary Disputes**

In addition to costing delivery drivers money, and in contradiction to the constitutional / statutory language the Eleventh Circuit's controlling decision in *Arriaga*, Your Honor's order in *Sarwi*, and all other applicable authority, PJ Cheese seeks to impose easily-avoidable time, expense, and burden on its current and former delivery drivers. Rather than simply paying funds per all the authority, PJ Cheese insists that claimants attempt recovery of those funds from taxing authorities. Notably, the delivery drivers are unsophisticated low-wage workers, often non-fluent in English, who likely must pay for representation in such efforts. Considering the relatively modest amounts of disputed funds, that leaves them no practical means of recovery from the IRS and other taxing agencies.[8]

While PJ Cheese attempts to justify its withholdings by claiming that its delivery drivers can seek refunds from the IRS and/or state taxing agencies, employees cannot recover FICA deductions because any such claims are preempted by the FICA statute, which provides no private right of action. *Arevalo v. Havana Harry's II Inc.*, 2024 U.S. Dist. LEXIS 6668, at *5-9 (S.D. Fla. Jan. 12, 2024).

Thus, if Your Honor were to deny Mr. O'Dell relief, the practical result would be that he would not receive money to which he is clearly entitled. This inequitable result would fly in the

---

[8] PJ Cheese's pattern strongly suggest that it persists in withholdings as a means of retaliating against delivery drivers who assert the claim, especially considering that PJ Cheese creates unnecessary employment taxes for itself and obligates itself to defend constant disputes over its holdings. This retaliation explicitly violates the Florida Constitution and the Florida Minimum Wage Act. *See* Fla. Const. Art. 10 § 24(d) (section of Florida minimum wage law titled "**Retaliation prohibited**") (emphasis in original); Fla. Stat. § 448.110 (5) (similar)

face of the remedial purpose of making sure that all workers receive the amount they have earned. *See* Fla. Const,. Art. 10 § 24(a); Fla. Stat. § 448.110(2).

## II.   CONCLUSION

Consistent with Your Honor order prohibiting PJ Cheese from withholding from Mr. Sarwi's recovery in the exact same claim, the Eleventh Circuit's controlling decision in *Arriaga*, and all other authority, Claimant respectfully requests an order finding that Mr. O'Dell's recovery is "reimbursements" and order PJ Cheese to pay Mr. O'Dell the $3,063.47 that it withheld from him.

Respectfully submitted,

*/s/ Jeremiah Frei-Pearson*
Jeremiah Frei-Pearson
Panning Cui
**FINKELSTEIN, BLANKINSHIP,**
**FREI-PEARSON & GARBER, LLP**
One North Broadway, Suite 900
White Plains, New York 10601
Tel.: (914) 298-3281
jfrei-pearson@fbfglaw.com

and

*/s/ Mark Potashnick*
Mark A. Potashnick
**WEINHAUS & POTASHNICK**
11500 Olive Blvd., Suite 133
St. Louis, Missouri 63141
Tel.: (314) 997-9150 ext. 2
markp@wp-attorneys.com

*Attorneys For Claimant John O'Dell*

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing with exhibits was served on PJ Cheese, Inc.'s counsel of record via the AAA's electronic case filing system on this 16th day of October, 2025.

*/s/ Mark Potashnick*

20